**Merle Arlo PETERSEN, Appellee,**

v.

**FARMERS CASUALTY COMPANY, Appellant.**

No. 2–56435.

Supreme Court of Iowa.

Feb. 19, 1975.

Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellant.

Daniel D. Sanderson, Estherville, for appellee.

Heard before MOORE, C. J., and LeGRAND, REES, HARRIS and McCORMICK, JJ.

LeGRAND, Justice.

This appeal presents questions arising as an aftermath to earlier litigation in which Clifford Coleman recovered judgment against plaintiff in the amount of $30,-000.00 for damages suffered in an automobile accident on June 25, 1967.

At that time, plaintiff was insured by an automobile liability policy issued by defendant Farmers Casualty Company with personal injury limits of $25,000.00. Coleman's claim against plaintiff was defended by Farmers Casualty Company, which employed Robert Culver, an attorney of Emmetsburg, Iowa, for that purpose. Since the prayer for damages exceeded the policy limits, plaintiff was given the usual excess coverage letter concerning employment of his own counsel to protect his interests. He sought independent advice, but the litigation was conducted entirely by Mr. Culver. Plaintiff's personal attorney, who also represents him here, did not participate in the trial of the case.

Following entry of the judgment in Coleman's suit against plaintiff, the company decided to seek a reversal, and Attorney Culver notified plaintiff an appeal would be taken. However, the appeal was not perfected, and it was ultimately dismissed for that reason. This, of course, made the judgment against plaintiff final, and it was stipulated he paid $5,143.42 from his own funds, which, together with $25,000.00 paid by the company under its policy, fully satisfied Coleman's judgment.

Plaintiff then started this action to recoup his loss from Farmers Casualty. He also asked damages for impairment of credit, embarrassment and being held up to public ridicule. He does not claim any independent negligence by Farmers Casualty. He relies on the negligent conduct of Mr. Culver in failing to take timely steps to preserve the right of appeal. Plaintiff's case, therefore, depends solely upon the theory defendant is liable for the negligence of its attorney.

Upon trial of the case, the jury awarded plaintiff $16,000.00. As already noted, $5,143.42 represented what plaintiff supplied to pay off Coleman's judgment. The remaining $10,856.58 was to compensate him for consequential damages.

Two issues are raised on this appeal. They are: (1) error in failing to sustain defendant's motion for a directed verdict; and (2) error in allowing the jury to assess damages for impaired credit, embarrassment and public ridicule.

We hold for plaintiff on the first issue and for defendant on the second. We therefore affirm in part, reverse in part, and remand to the district court for entry of appropriate judgment.

I. We consider first the question of the insurer's liability for the negligence of its attorney in failing to perfect an appeal from the adverse judgment. This issue was raised throughout the case—first by motion to dismiss, then by motion for a directed verdict, again by motion to strike Division II of the petition (which pertained to Mr.

Culver's negligence), and, finally, by objection to the instruction under which the jury was told Mr. Culver's negligence was imputed to defendant as a matter of law.

All these complaints raise this single question: Is the negligence of its attorney imputable to defendant under the circumstances shown here?

The jury verdict established Mr. Culver's negligence on one or both of the grounds submitted, which were (1) failure to file post trial motions and (2) failure to file notice of appeal. Our task is to decide whether that negligence, as the instructions told the jury, "will be imputed to the defendant Farmers Casualty Company."

Farmers Casualty argues Culver was an independent contractor and cites the general law that an employer is not liable for the negligence of an independent contractor.

We find no occasion on which we have said an attorney is an independent contractor, although we have frequently held him to be an agent of his client. Woodruff & Son v. Rhoton, 251 Iowa 550, 555, 101 N.W.2d 720, 723 (1960); Farnsworth v. Hazelett, 197 Iowa 1367, 1369–1375, 199 N.W. 410, 411 (1924).

Farmers Casualty argues this case is identical to Merritt v. Reserve Insurance Company, 34 Cal.App.3d 858, 110 Cal.Rptr. 511, 526 (1973) and urges us to adopt the theory of this statement from that opinion:

"Plaintiff's theory on this aspect of the case is that trial counsel acted as agents for their employer, Reserve, and the employer may be held liable for the negligent conduct of its agents in defending the lawsuit.

"We do not accept the claim that vicarious liability falls on one who retains independent trial counsel to conduct litigation on behalf of a third party when retained counsel have conducted the litigation negligently * * ' * [I]n our view, independent counsel retained to conduct litigation in the courts act in the capacity of independent contractors, responsible for

the results of their conduct and not subject to the control and direction of their employer over the details and manner of their performance."

We cannot agree that *Merritt* should be persuasive in our consideration of the present case. Courts have always distinguished between the defense of a claim under insurance policy provisions by which an insurer undertakes to "defend any suit alleging bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent" and the failure to adequately appeal an adverse judgment after having agreed to do so.

The former is dictated by the policy itself; the latter is an obligation voluntarily assumed separate from the policy, since it is generally held there is no duty under the policy to *appeal*, as distinguished from the duty to *defend*. See Annot. 69 A.L.R.2d 690, 692, 693 (1960); Hawkeye-Security Insurance Company v. Indemnity Insurance Company of North America, (10th Cir. 1958), 260 F.2d 361, 363; Lincoln Park Arms Building Corporation v. United States Fidelity & Guaranty Company, 287 Ill.App. 520, 5 N.E.2d 773, 780 (1937); Sterios v. Southern Surety Company, (1922), 122 Wash. 36, 209 P. 1107, 1109–1111; Getchell & Martin L. M. Company v. Employers Liability Assurance Corporation, 117 Iowa 180, 182, 90 N.W. 616, 617 (1902).

We do not believe this case can be resolved by reliance on opinions dealing with the negligence of an insurer's attorney when tactics, strategy, and professional judgment are involved. Courts are divided on this question, but neither theory—that such negligence is imputable or that it isn't—is decisive on this appeal. As already indicated, one of these is articulated in Merritt v. Reserve Insurance Company, supra. The opposite position is well stated in Smoot v. State Farm Mutual Automobile Insurance Company, (5th Cir. 1962), 299 F.2d 525, 530, where this appears:

"Another basic contention of the Insurer should likewise be put to rest. In spite of the outright promise to 'defend any suit against the insured alleging such injury * * * even if such suit is groundless, false or fraudulent * * *;' the Insurer now insists that it has no responsibility for damage sustained by the Assured even if it should be caused by legally culpable neglect or bad faith on the part of the attorney supplied by it to maintain the defense. In other words, the Insurer asserts that its duty is fulfilled by selecting competent counsel whose acts thereafter are that of one akin to an independent contractor. * * * The duty to defend is an important and frequently distinguishable part of the insurance contract. * * * Those whom the Insurer selects to execute its promises, whether attorneys, physicians, no less than company-employed adjustors, are its agents for whom it has a customary legal liability."

There is supporting authority for both *Merritt* and *Smoot*, but they do not fit the fact pattern with which we are now confronted. No claim is made that Farmers Casualty negligently defended the case against plaintiff. Plaintiff relies solely on the allegation he was deprived of his right to appeal by the negligence of Farmers Casualty's attorney. Our consideration is limited accordingly.

In this context the important facts are these. After Coleman secured judgment for $30,000.00 against plaintiff, Farmers Casualty decided to appeal. This, of course, was the company's decision, not that of its attorney. See Hawkeye-Security Insurance Company v. Indemnity Insurance Company of North America, supra, 260 F.2d at 363.

This decision was communicated to plaintiff by its attorney (Robert Culver), whose authority to do so is not challenged. Nevertheless, the appeal was not timely taken, leading to the ultimate dismissal of the appeal.

Of course, plaintiff, as well as Farmers Casualty, had a substantial stake in upset-

ting the judgment. Plaintiff might well have decided to go it alone if Farmers Casualty had determined not to appeal. Not only was there testimony concerning the probability of reversal (see Koppie v. Allied Mutual Insurance Company, 210 N.W.2d at 844, 847 (Iowa 1973)), but plaintiff might have effected an advantageous settlement of his obligation, given the additional time an appeal would have afforded. See Smoot v. State Farm Mutual Automobile Insurance Company, supra, 299 F.2d at 533.

■ Having been advised that Farmers Casualty would appeal, plaintiff was justified in concluding he need not do so. At this time, too, Farmers Casualty, either directly or through its attorney, knew plaintiff's personal attorney was not participating in the defense and was relying on Mr. Culver. Even if Farmers Casualty had no personal knowledge of this, what Mr. Culver knew is chargeable to the company.

■ We hold when Farmers Casualty decided to appeal (which it was not obligated to do) and when it advised plaintiff it would take that course, thereby lulling plaintiff into a sense of security, it cannot later claim immunity because its lawyer negligently failed to perfect the appeal.

In the early case of Getchell & Martin L. M. Company v. Employers Liability Assurance Corporation, supra, we said at 117 Iowa 182, 90 N.W. 617:

"The facts are that Newbury obtained judgment against plaintiff in the district court for $4,300 and defendant, in attempting to take an appeal, failed to perfect it in proper time, and the judgment was affirmed on motion. It is upon this failure to have the appeal heard upon its merits that the claim of liability is founded. We very much doubt whether defendant, under the clause of the contract we have set out, would be liable for failing to take an appeal if it thought it inadvisable, or in any event be under obligation to do more than employ a competent attorney; but it appears that, after the judgment below, it expressly agreed to take an appeal, and attempted to do so, and its liability in this action we think must rest upon this second agreement. The question of whether it was obliged to do more than select a competent attorney is extensively discussed by counsel, but we do not feel required to determine it. * * * "

The same circumstances which this court considered important in *Getchell* are present here, too, and Farmers Casualty is responsible for failing to take an appeal after it had assured plaintiff it would do so.

For cases from other jurisdictions which lend support to this conclusion, although differing in factual background, see McAleenan v. Massachusetts Bonding & Insurance Company, 173 App.Div. 100, 159 N.Y.S. 401, aff'd 219 N.Y. 563, 114 N.E. 114 (1916); Rosenbloom v. Maryland Casualty Company, 153 App.Div. 23, 137 N.Y.S. 1064, 1065 (1912).

■ We also reject the argument that Mr. Culver was plaintiff's attorney, too, and therefore, if Culver's negligence is imputable to Farmers Casualty, it is equally imputable to plaintiff. See Attleboro Manufacturing Company v. Frankfort Marine Accident & Plate Glass Insurance Company, (1st Cir. 1917), 240 F. 573, 581, where a similar argument was refused because the insured had no right to select the attorney who defended the case and had no control over him after his employment.

Even stronger is this statement from National Farmers Union Property & Casualty Company v. O'Daniel, (9th Cir. 1964), 329 F.2d 60, 65:

"National, however, contends that [attorney] Lucas was also the agent of [the insured], that Lucas's conduct and knowledge therefore must also be imputed to [the insured], and that where one agent is acting for two principals with the knowledge and consent of both, neither is liable to the other for the acts of the agent. Counsel has cited us no case where this rule has ever been applied in a situation

such as the present one where one of the principals selected the agent, had complete control over the agent, and owed a fiduciary duty to the other principal."

Limiting our conclusion to the facts before us and expressing no opinion as to the vicarious liability of an insurer to the insured for negligence of the insurer's attorney in the defense of a claim under the policy provisions which reserve that right to the insurer, we hold Farmers Casualty is liable for failing to perfect an appeal from the judgment rendered in favor of Coleman against plaintiff and that the negligence of Attorney Culver is imputable to Farmers Casualty.

It follows there is no merit to Farmers Casualty's first assignment of error.

We have reviewed the authorities relied on by Farmers Casualty, particularly Brinkley v. Farmers Elevator Mutual Insurance Company, (10th Cir. 1973), 485 F.2d 1283 and Dickinson v. Mailliard, 175 N.W.2d 588 (Iowa 1970). We do not find they support the position taken.

II. Defendant's remaining claim challenges on two grounds the submission of impairment of credit, embarrassment, and public ridicule as elements of damage. First, it says they are not proper elements to be considered; and, next, it argues there was no substantial evidence to justify their submission.

We pass the first ground and hold defendant is correct as to the second. We set out first the entire evidence on the question of embarrassment and public ridicule:

"Q. Mr. Petersen, you have previously testified that you were served by the Sheriff of Dickinson County with a notice of a levy and a notice that your property was being levied upon to satisfy the Coleman judgment. Did you learn that the notice that had been served upon you had also been published in the Spirit Lake paper?

"A. Yes.

"Q. And did you also learn that the notice that your property had been levied upon was being held for sale by the Sheriff of Dickinson County, Iowa, to satisfy the judgment and that it had been posted in public places in Dickinson County, Iowa?

"A. Yes.

"Q. How did you learn this?

"A. Through friends, people I work with.

"Q. [They] told you that they had seen it?

"A. Yes.

"Q. What effect did this have on you?

"A. Created some embarrassment for me to [have] people asking me about the situation.

"Q. Mr. Petersen, was your wife at home when the Sheriff served this notice?

"A. I believe so."

On the issue of credit, this is what the record shows, with only counsel's objections and rulings thereon deleted:

"Q. You previously testified that you increased the loan on your farm in order to pay this judgment off. Mr. Petersen, do you know what effect that had upon your credit?

"A. Yes.

"Q. Well, let me for the purpose of foundation, Mr. Petersen, you have had the occasion to borrow money in the past, have you not?

"A. Yes.

"Q. And you have had the occasion to use property that you owned as collateral or security for the money that you borrowed?

"A. Yes.

"Q. And do you know what loan companies and loan people consider when they determine how much money they will loan you?

"A. Yes.

"Q. Basing your answer upon your business experience and upon your experience

in having obtained loans using property as collateral in the past, do you know what effect the increasing of the mortgage of the loan on your farm had upon your ability to borrow money?

"A. I feel if I would have need to borrow more money or want to borrow money I wouldn't have been able to.

"Q. Is that loan still in existance on your farm?

"A. Yes."

We hold this testimony fails to meet our requirement that an issue must be supported by substantial evidence. Rule 344(f)(1), Rules of Civil Procedure; Volkswagen Iowa City, Inc. v. Scott's Incorporated, 165 N.W.2d 789, 793 (Iowa 1969). A mere scintilla is not enough. Robson v. Barnett, 241 Iowa 1066, 1068, 44 N.W.2d 382, 383 (1950): The meager statements of plaintiff concerning these items, without more, affords no basis upon which a jury could assess damages except by surmise and conjecture. We hold the claim for damages for these elements should have been withdrawn from the jury.

This holding, however, does not necessitate a reversal since the other damages were agreed upon by stipulation. Plaintiff was required to pay $5143.42 to secure a release of the judgment against him. This is the amount he is entitled to with interest thereon from the date of the judgment, May 10, 1973. The remainder of the jury award must be set aside.

For the reasons stated, the case is affirmed in part, reversed in part, and remanded for entry of appropriate judgment.

Affirmed in part, reversed in part, and remanded.