860 P.2d 1300

Virginia M. LLOYD and Willie Lee Lloyd, individually and as wife and husband, Plaintiffs–Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant–Appellee.

No. 1 CA–CV 91–0017.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 27, 1992.

Reconsideration Denied Jan. 14, 1993.

Petition and Cross-Petition for Review Denied Nov. 4, 1993.

Jennings, Strouss & Salmon by Gary L. Stuart, Jay A. Fradkin, James M. Ackerman, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Ralph E. Hunsaker, Frank M. Fox, Christopher Robbins, Phoenix, for appellee.

## OPINION

GERBER, Judge.

The main issue we are asked to determine in this appeal is the liability of an insurance company for assuming a defense when no policy coverage truly existed. In summary, we hold that an insurer's voluntary assumption of the duty to defend may give rise to a cause of action for derelictions in that defense even when there is no actual coverage.

## FACTS

On April 12, 1986, Virginia Lloyd was struck by a midget race car while in the pit area at Manzanita Speedway in Phoenix. She suffered massive injuries resulting in quadriplegia. The car was partly owned by George and Sharon Lane.

The Lanes had an automobile policy with State Farm for their Cadillac as well as a homeowners policy with State Farm Fire & Casualty. They purchased both policies through the same State Farm agent. They did not attempt to obtain insurance coverage on the midget car. They knew they had no insurance on it, and they understood that they could not get coverage for it because it was a race car.

## PROCEDURAL HISTORY

The Lloyds filed suit against the Lanes. Mr. Lane was served with the summons and complaint on November 10, 1987. He ignored the service, thinking the papers were from a previous suit in which he was not a party. On December 28, 1987, the Lloyds filed an application for entry of default against the Lanes. They sent a copy of the default application to the Lanes and to State Farm, both of whom received their copies on December 29, 1987. The default was to be effective January 12, 1988.

Upon receiving the application for default, Mr. Lane called the Lloyds' attorney who advised him to call his insurer. Lane then called his State Farm agent, who in turn advised him to call the State Farm claims department. Lane contends that he called the claims department no later than January 1, 1988 regarding the default. He testified that somebody told him over the telephone that State Farm would "take care of it." Lane said that he took these words to mean that State Farm would take care of the case, including the pending default, and that he need do nothing further.

For its part, State Farm challenges Lane's statement that he spoke with anyone in the State Farm office. It maintains that its policy is to turn potential default

situations over to an attorney immediately. However, it took no legal steps regarding the pending default. The default against Lane became effective on January 12, 1988, well before an answer was filed.

Ten days later, on January 22, 1988, State Farm hired attorney Robert Beltz to defend the Lanes. State Farm sent the Lanes a reservation of rights letter for the first time on January 28, 1988, and a second letter on February 16, 1988, advising the Lanes that it had hired Beltz to represent them but still reserved the right to deny coverage. The letter also stated that State Farm would begin its investigation into whether coverage existed. This letter warned the Lanes that there was a possibility of judgment in excess of coverage and that they could employ their own attorney to look after their personal interests. State Farm also simultaneously informed Beltz that it was reserving its rights and that, after it investigated, it would advise him of its decision on coverage.

Beltz filed an answer on the Lanes' behalf on January 27, 1988, thinking that he had an understanding with the Lloyds' attorney that the Lloyds would not enforce the default. On April 22, 1988, Beltz filed a motion to set aside the January 12 default, which the trial court eventually denied on July 20, 1988.

In its investigation of coverage, State Farm did not contact the Lanes but acquired its information from Beltz. Beltz wrote a detailed letter to State Farm on April 13, 1988, informing State Farm that he had received substantial portions of the discovery in a prior suit. He summarized Mr. Lane's deposition from that case, including the fact that "[s]ometime prior to April 12, 1986, he [Lane] sold one-half interest in a midget racer to the Randalls."

Meanwhile, on April 8, 1988, the Lloyds' attorney served on Beltz a settlement demand for the amount of any insurance policy. The offer was made to expire May 8, 1988. The parties conceded that this was, in essence, an offer to settle for $50,000.

Beltz forwarded this offer to State Farm on April 13, noting that this was his first indication that the Lloyds planned to enforce the default.

Neither Beltz nor State Farm sent a copy of this settlement demand to the Lanes. Beltz did not do so immediately because he had not yet communicated with the Lanes and had been unable to contact Mr. Lane. Beltz did eventually discuss the settlement letter with the Lanes on a date not later than April 22, 1988. The extent of their discussion is unknown.

State Farm contemporaneously sought the advice of independent counsel who suggested three possible courses of action: (1) settle for $50,000; (2) file a declaratory judgment action; or (3) move to set aside the default. On April 22, 1988, the State Farm claim committee recommended that State Farm formally deny the claim because it concluded that there was in fact no coverage.

On May 6, 1988, State Farm rejected the $50,000 settlement demand and instructed Beltz to withdraw and simultaneously advised the Lanes to obtain their own counsel. The Lanes received this letter after the May 8, 1988 expiration of the Lloyds' $50,000 settlement demand.

On July 20, 1988, the trial court denied Beltz's motion to set aside the default. The result was that the Lloyds took default judgment against the Lanes in the amount of $10,000,000 plus costs. The Lanes eventually assigned to the Lloyds their rights against State Farm. The Lloyds and Lanes then filed suit against State Farm.

The parties filed cross-motions for summary judgment on issues related to assumption of the duty to defend. The court granted State Farm's motion and denied the plaintiffs' motion. The Lloyds appealed; the Lanes withdrew their appeal. We have jurisdiction pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") § 12–2101(B).

## ISSUES RAISED

The Lloyds raise the following issues on appeal:

1. Did State Farm assume a duty to defend the Lanes in the Lloyd vs. Lane lawsuit?

2. Did State Farm breach the duty to defend?

3. If State Farm breached the duty to defend, to what damages would the Lanes have been entitled?

4. Was State Farm guilty of bad faith in its defense of the Lanes?

5. Is State Farm estopped to deny coverage?

We address only those issues which are dispositive of this appeal.

## I. Assumption of Duty to Defend

■ The Lloyds concede, with State Farm, that the Lanes' automobile policy did not in fact cover the accident which injured Mrs. Lloyd. The Lloyds assert that State Farm nonetheless assumed a duty to defend the Lanes when the unknown claims person in the State Farm office told Mr. Lane over the telephone that State Farm would "take care of it" and by shortly thereafter hiring Beltz to represent the Lanes. State Farm does not dispute the presence of evidence sufficient for a trier of fact to find that it had assumed the Lane defense. Instead, it asserts that as a matter of law it can have no liability for assumption of a duty to defend in the absence of an insurance policy covering the accident. It asserts, further, that no negligence action lies against an insurer for assuming a duty to defend when, as here, there is in fact no coverage at all.

■ The law is contrary to State Farm's position. When a person voluntarily undertakes an act, even when there is no legal duty to do so, that person must perform the assumed duty with due care and is liable for any lack of due care in performing it. *See, e.g., Thompson v. Sun City Community Hospital,* 141 Ariz. 597, 608, 688 P.2d 605, 616 (1984); Restatement (Second) of Torts § 323 (1965). This doctrine is neither new nor unusual. The Restatement states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) His failure to exercise such care increases the risk of such harm, or
>
> (b) The harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323. Section 323 has been adopted in Arizona. *See, e.g., Thompson v. Sun City Community Hospital,* 141 Ariz. at 608, 688 P.2d at 616 (1984); *Barnum v. Rural Fire Protection Co.,* 24 Ariz.App. 233, 238, 537 P.2d 618, 623 (1975). The volunteer may be liable for economic harm as well as physical harm. *See McCutchen v. Hill,* 147 Ariz. 401, 404, 710 P.2d 1056, 1059 (1985). No language in § 323 or elsewhere exempts an insurance company from this standard doctrine regarding gratuitous assumption of duty.

State Farm argues that no court has ever held an insurer liable for its defense when there was no valid coverage for the claim. It asserts that the California Supreme Court did not so hold in *Travelers Ins. Co. v. Lesher,* 187 Cal.App.3d 169, 231 Cal. Rptr. 791 (1986) and that *Petersen v. Farmers Casualty Co.,* 226 N.W.2d 226 (Iowa 1975), is premised on a valid insurance policy.

We find these interpretations incorrect. While there were insurance policies in *Petersen* and *Attleboro Mfg. Co. v. Frankfort Marine, Accident & Plate Glass Ins. Co.,* 240 F. 573, 580 (1st Cir.1917), the insurer undertook to act in both situations even though the policy did not require it to do so. In *Petersen,* the insurance policy did not require the insurer to appeal an adverse judgment against its insured. The

insurer nonetheless decided to do so and informed the insured it would appeal. The attorney hired by the insurer then negligently failed to perfect the appeal. The Iowa Supreme Court held that the insurer could be liable in negligence for negligently performing a gratuitous duty:

> Having been advised that Farmers Casualty would appeal, plaintiff was justified in concluding he need not do so. At this time, too, Farmers Casualty, either directly or through its attorney, knew plaintiff's personal attorney was not participating in the defense and was relying on Mr. Culver [the attorney hired by Farmers Casualty]. Even if Farmers Casualty had no personal knowledge of this, what Mr. Culver knew is chargeable to the company.

> We hold when Farmers Casualty decided to appeal (which it was not obligated to do) and when it advised plaintiff it would take that course, thereby lulling plaintiff into a sense of security, it cannot later claim immunity because its lawyer negligently failed to perfect the appeal.

226 N.W.2d at 230.

Similarly, in *Attleboro Mfg.* the insurer also had no duty to defend the insured but undertook to do so. The court held that once the insurer undertook the defense, "the law imposed upon it, for the [insured's] benefit, the duty of so conducting the defense as not negligently to injure the [insured's] rights." 240 F. at 580.

State Farm offers no reason, and we find none, as to why an insurance company should be exempt from what Justice Cardozo once called the universal and "ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully...." *Glanzer v. Shepard*, 233 N.Y. 236, 239, 135 N.E. 275, 276 (1922). One principal reason for this doctrine of gratuitous duty is that the assumption of duty generates reliance in the beneficiary that the party assuming the duty will take over from the beneficiary whatever needs to be done.

On the facts before us, we cannot find any exception from this doctrine for insurance companies such as State Farm asserts. A jury could find that State Farm assumed the duty of defense by promising "to take care of it" and then failed to follow through on that promise to prevent the pending default.

■ In any gratuitous assumption of duty, the defendant is liable for damages to the extent they are worsened by the defendant's assumption. "Arizona has recognized the factor of reliance as a necessary element of recovery against a volunteer." *Barnum v. Rural Fire Protection Co.*, 24 Ariz.App. 233 at 237–38, 537 P.2d 618 at 622–23, citing *Taylor v. Roosevelt Irrigation Dist.*, 72 Ariz. 160, 232 P.2d 107 (1951). The extent of damages is a jury question.

■ As to the measure of damages, we find the following statement possibly helpful in assessing damages if such are eventually awarded:

> [O]ne who seeks to hold another responsible for neglect in the conduct of litigation must show that the action which has been neglected would probably have been successful, and therefore that its neglect has directly resulted in damages measured by the value or amount of the rights which were lost by the default.

*Colsch v. Travelers Insurance Co.*, 361 Mass. 873, 281 N.E.2d 593, 594 (1972), quoting *McAleenan v. Massachusetts Bonding & Ins. Co.*, 232 N.Y. 199, 204–5, 133 N.E. 444, 446. *See* 7C John A. Appelman, *Insurance Law & Practice*, § 4687, at 185–86.

■ The result of allowing the default to become effective was to admit liability and preclude the Lanes from putting on a defense. The Lanes were damaged by the default judgment if the jury would have rendered a defense verdict or if it would have reduced their liability for the Lloyds' damages. Thus, the measure of damages here would be the difference between the

$10 million judgment and the judgment that would have resulted had the case gone to trial.

Because of these questions of fact, the summary judgment for State Farm on this issue is reversed.

## II. Failure to File Answer

■ State Farm argues that its failure to file an answer was not negligent. However, when an insurer has assumed the defense of its insured, the failure to file a timely answer can be negligence. *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1131 (D.C.Cir.1989). State Farm also argues that the Lanes delayed in notifying it of the accident and were themselves negligent in several respects: When notification was made, the application for default had already been made; Lane's notification came during the busy holiday season; there was no claim number or description of the claim to allow a mail clerk to know where to direct the case; and Mr. Lane later provided State Farm with an incorrect claim number. State Farm asserts that it retained Beltz as soon as possible after gathering enough facts to forward the application for default to the proper claims representative. State Farm concludes that the real fault in failing to timely answer the complaint was not its own negligence but rather that of the Lanes because of their less-than-diligent and inaccurate response to the summons and complaint.

Obviously these arguments raise additional factual questions about negligence and comparative negligence which cannot be resolved as a matter of law by summary judgment but only by a jury's fact-finding.

■ The same, however, also cannot be said about the Lanes' allegation that State Farm was negligent in failing to notify the Lanes about a settlement offer of $50,000. State Farm properly argues that it cannot be held liable for failing to notify the Lanes or to settle the case because attorney Beltz represented the Lanes. State Farm relies on *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 537, 647 P.2d 1127, 1135, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982); *Midamar Corp. v. National–Ben Franklin Ins. Co. of Illinois*, 898 F.2d 1333, 1337 (8th Cir.1990). We agree that summary judgment for State Farm is proper on the failure to communicate and to settle issue because, having hired Beltz to represent the Lanes, State Farm had no obligation to notify the Lanes of the settlement offer or to persuade them to accept it. That obligation belonged to Beltz. Arizona Rules of Professional Conduct, Supreme Court, Rule 42, E.R. 1.4—Communication (see comments). *See also In re Brown*, 104 Ariz. 387, 390, 453 P.2d 958, 961 (1969). Accordingly, summary judgment for State Farm on this issue is proper.

## III. Statutory Protection

■ State Farm also contends that this suit is barred by A.R.S. § 20–1130 which states:

Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:

.    .    .    .    .

3. Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim.

State Farm misconstrues the effect of this statute. The statute merely allows the insurer to "investigat[e]" and "negotiat[e] ... toward a possible settlement" without thereby admitting coverage. *See Kelley v. Robison*, 121 Ariz. 229, 230, 589 P.2d 472, 473 (App.1978). No construction of this language insulates the insurer from liability for tortious conduct during the investigation and negotiation of a claim. *See Parsons v. Continental National American Group*, 113 Ariz. 223, 228, 550 P.2d 94,

99 (1976). Nor does the statute preclude an insurer from assuming a duty and performing it negligently. To the extent the trial court relied on this statute, the summary judgment favoring State Farm on this statutory issue must be reversed.

## IV. Estoppel Based on Attorney Misconduct

 For their part, the Lloyds argue that State Farm should now be estopped to deny coverage because Beltz, whom it hired to defend the Lanes, communicated to State Farm information that State Farm used to deny coverage. The Lloyds rely on *Parsons v. Continental National American Group, id.* at 228, 550 P.2d 94, in which our supreme court held that the insurer was estopped from denying coverage under circumstances showing an admission of coverage.

State Farm cannot be estopped from denying coverage based on Beltz's letter. It has never admitted policy coverage, and its investigatory conduct here cannot be construed to be such an admission. The Lloyds cannot use estoppel to create policy coverage when none in fact exists under the policy. Estoppel is not a substitute for insurance coverage. *Parsons* is factually inapplicable. The trial court did not err in so ruling.

## V. Attorneys' Fees

We deny the appellants' request for attorneys' fees which was based on A.R.S. § 12–341.01(A). This suit arises not from contract but from an asserted gratuitous assumption of duty, and hence A.R.S. § 12–341.01(A) is inapplicable.

## CONCLUSION

An insurer may assume a duty to defend even when there is, in fact, no policy coverage and may act negligently in exercising that duty. Because of fact questions about whether negligence occurred and the extent of damage, if any, we remand to the trial court for further proceedings consistent with this opinion.

McGREGOR and EHRLICH, JJ., concur.