**Sergio RENTERIA, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV 05–532–TUC–CKJ.**

United States District Court, D. Arizona.

Sept. 11, 2006.

912

Herbert Beigel, Herbert Beigel & Associates LLC, Tucson, AZ, for Plaintiffs.

Elizabeth Anne Wilson, U.S. Attorney's Office, Tucson, AZ, for Defendant.

## ORDER

JORGENSON, District Judge.

On May 16, 2006, Magistrate Judge Charles R. Pyle issued a Report and Recommendation [Doc. # 25] in which he recommended Defendant's Motion to Dismiss [Doc. # 9] be granted in part and denied in part. Plaintiffs and Defendant have filed objections to the Report and Recommendation and Plaintiffs have filed a response to Defendant's Objection. Plaintiffs have requested oral argument. The Court finds, however, resolution of the issues is appropriate without oral argument.

The Magistrate Judge has set forth the factual background and this Court will not repeat it here.

*Defendant's Objection to Report and Recommendation*

*Good Samaritan Doctrine*

Magistrate Judge Pyle found that, under Arizona law, the Good Samaritan Doctrine is applicable to economic harm as well as physical harm. *Lloyd v. State*

*Farm Mutual Auto Insurance Co.,* 176 Ariz. 247, 250, 860 P.2d 1300, 1303 (App. 1992); *Jeter v. Mayo Clinic Arizona,* 211 Ariz. 386, 402, 121 P.3d 1256, 1272 (App. 2005). Defendant asserts, however, that the Arizona courts have never applied the doctrine to commercial lending cases and the Arizona courts have not determined whether "a person who gratuitously lends money to a person who relies on the offer will be liable under the Restatement § 323 if the person negligently fails to make the loan, causing economic harm to proposed borrower." Defendant's Objection to Report and Recommendation, p. 3. *Lloyd* and *Jeter* make clear that the Good Samaritan Doctrine applies to economic harm. Neither of these cases nor any other Arizona authority excepts lending from that authority. The Good Samaritan Doctrine, therefore, is applicable to the Renterias' claims.

*Misrepresentation*

██ Magistrate Judge Pyle also found that the Renterias' claim regarding the inability to plant alfalfa on a leased farm could go forward because the AMTA payments had apparently been approved and the Renterias could reasonably rely on Defendant to use reasonable efforts to timely distribute the funds. Defendant asserts that the misrepresentation exception should bar the Renterias' claim:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . .

28 U.S.C. § 2680(h).

The Renterias assert that, without regard to the misrepresentations, "the defendant's negligent approval of crops that could not be cultivated because of prior use of herbicide is what caused plaintiffs harm, in addition, of course, to the negligent delay in purely ministerial processing of one of the loans causing plaintiffs to lose the benefit of an entire crop season." Plaintiffs' Response to Defendant's Objection to Magistrate's Report and Recommendations, p. 2. Although the Renterias appear to address Defendant's objection as if it is regarding a herbicide claim, Defendant's objection refers to the inability of Plaintiffs to plant alfalfa because of the alleged untimely distribution of funds. The Court will address that objection.

██ The United States is immune under 28 U.S.C. § 2680(h) from "[a]ny claim arising out of . . . misrepresentation," whether negligent or willful. *Mount Homes, Inc. v. United States,* 912 F.2d 352, 354 (9th Cir. 1990). The § 2680(h) misrepresentation exception is broadly construed. *Frigard v. United States,* 862 F.2d 201, 202 (9th Cir. 1988). This Court "must look beyond the characterizations in the pleadings to distinguish misrepresentation from negligence claims, a task which is frequently far from simple." *Rich Prods. Corp. v. United States,* 804 F.Supp. 1270, 1272 (E.D.Cal. 1992).

The United States Supreme Court has provided guidance in distinguishing misrepresentation claims from negligence claims in the context of 28 U.S.C. § 2680(h) immunity claims. *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961); *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). Where the plaintiffs relied on an inaccurate written appraisal prepared by the Federal Housing Administration ("FHA"), the Court held that the plaintiff's claim against the FHA based on this reliance was barred by the misrepresentation exception. *Neustadt,* 366 U.S. at 710–11, 81 S.Ct. 1294. The Court defined negligent misrepresentation as breach of "the

duty to use care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs." *Id.* at 706, 81 S.Ct. 1294. The Supreme Court also has distinguished the duty to obtain and communicate accurate information from the duty to perform a separate task. *Block.* In *Block,* the plaintiff received a loan from the Farmers Home Administration ("FmHA") to build her home. *Block,* 460 U.S. at 291, 103 S.Ct. 1089. The loan agreement required the FmHA to approve all plans and gave the FmHA the right to inspect and test all materials and workmanship. *Id.* When plaintiff discovered that the completed house was defective, plaintiff sued FmHA alleging that it had failed properly to inspect and supervise construction. *Id.* at 297, 103 S.Ct. 1089. The Supreme Court held that FmHA was subject to suit for allegedly breaching a separate duty to supervise the construction of the plaintiff's home, independent of its duty to obtain and communicate information. *Id.* at 297, 103 S.Ct. 1089. The Supreme Court distinguished *Neustadt* on the grounds that plaintiffs in *Neustadt* had alleged no injury that they would have suffered independent of their reliance on the negligent appraisal. *Id.* In *Block,* however, the FmHA's misrepresentations were not essential to the claim of negligent supervision. *Id.* The Supreme Court held that FmHA's "duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction [was] distinct from any duty to use due care in communicating information" to the plaintiff. *Id.* The Court concluded that the misrepresentation exception did not bar the claim in *Block. Id.*

█ Therefore, in determining whether a claim is barred by the § 2680(h) misrepresentation exception, this Court must look beyond the language in which the complaint is couched and consider the "essence" or "gravamen" of the suit. *Rich Products Corp. v. United States,* 804 F.Supp. 1270, 1273 (E.D.Cal.1992) *(citing Mount Homes, Inc.,* 912 F.2d at 355). "[I]f the alleged misrepresentation is essential to the claim then the action is barred even though there is some other allied negligence by the government, for example, in gathering the information that proves inaccurate." *Id.* "When government misinformation is at issue, plaintiff must allege injury independent of that caused by the erroneous information." *Id. citing Mount Homes, Inc.* 912 F.2d at 356. The misrepresentation exception "particularly protects the United States from suit by commercial entities which claim to have lost money because of reliance on false government information." *Id.*

█ In stating a claim of negligence rather than misrepresentation, a plaintiff must eliminate the government's communication of inaccurate information from the essence of the claim. *See id.* The essence of the Renterias' claim is that the failure of Defendant to timely distribute the funds caused the Renterias to lose the benefit of an entire crop season. The essence of the action is based on negligent performance of a task separate from any alleged duty to obtain and communicate information. The Renterias' claim regarding the inability to plant alfalfa on a leased farm because the funds were not timely distributed is not barred by the misrepresentation exception.

*Plaintiff's Objection to Magistrate's Report and Recommendations*

*Crop Year 2000*

█ The Renterias assert that the Report and Recommendation incorrectly determined that the Renterias had failed to state a claim for the 2000 crop year. The Magistrate Judge determined that the

Renterias were not legally entitled to rely on their expectations for a loan to be approved promptly. The Renterias assert that the Magistrate Judge incorrectly considered information outside of the complaint. Although review is limited to the contents of the complaint, *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996), a dismissal is appropriate if some other bar to relief is apparent from the face of the complaint. 2A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice*, ¶ 12.07 at 12–68 to 12–69 (2d ed.1991 & supp. 1191–92), *citing Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Court agrees with the Renterias that a determination of whether the Renterias reasonably relied upon receiving a loan is not a question that can be determined in a motion to dismiss. However, if the Renterias did not have a legal right to rely upon receiving the loan, the Court need not reach the issue of whether the reliance was reasonable. Here, the loan could have been denied or not immediately funded.[1] The Renterias' apparent attempt to "equate loan eligibility with loan entitlement," *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1004 (9th Cir.1998), simply does not make the Renterias legally entitled to rely on their expectations of an approved loan. The Court finds that the Renterias have not stated a claim for crop year 2000.

*Crop Year 2001*

■ The Renterias object to the Magistrate Judge's consideration of the issue of whether Defendant had a duty to prevent the Renterias from entering into and ultimately defaulting on the loans. Rather, the Renterias assert that the Court should consider Defendant's duty to avoid negligently impairing collateral securing a loan. In support of this assertion, the Renterias cite to A.R. S. § 47–9207.A. That provision provides that "... a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession." A.R. S. § 47–9207.A. However, the Renterias have not alleged that Defendant was in possession of the collateral. Moreover, the Renterias have alleged that Defendant caused or exacerbated the crop failures, not that Defendant impaired the collateral[2] itself. The Court finds that the Renterias have not stated a claim establishing that Defendant had a duty pursuant to this statute. The Court finds, therefore, that the Renterias have failed to state a claim of negligence pursuant to this statute.

The Renterias also assert that Defendant's duty regarding the collateral in this case cannot be decided without considering the loan documents, the circumstances surrounding the decision on what crops to plant, Defendant's knowledge of the herbicide problem, and other issues. The Renterias cite *Frederick v. United States*, 386 F.2d 481, 487 (5th Cir.1967), for the proposition that a creditor may be sued if he irregularly or negligently sells security. There is no such allegation in this case. Similarly, the Renterias cite *Lifemark Hospitals, Inc. v. Liljeberg Enterprises, Inc.*, 304 F.3d 410 (5th Cir.2002), which holds that to exhibit a "trust relationship" requires protection of the debt or obli-

---

1. The Court notes that the Renterias object to consideration of this possibility because it is not contained within the complaint. However, 7 U.S.C. § 1983a(4) recognizes that loans may not be immediately funded. This is not a factual consideration, but a legal consideration.

2. The Court notes that the Renterias have not alleged that the property upon which the crops were planted was even the collateral for the loans. Rather, it appears that the collateral for the loans was real property situated in Oregon. Complaint, ¶ 11.

gation and the collateral. This duty, however, arose from substantive Louisiana "pledge" law.[3] However, the Renterias have failed to allege under what authority a duty is required in Arizona. Moreover, the Renterias' reliance on *First National Bank v. Milford*, 239 Kan. 151, 718 P.2d 1291 (1986), for the determination of who is responsible for the care and preservation of crops fails to consider that such a duty was imposed by a statute similar to A.R.S. § 47–9207.A. because the "creditor" exercised dominion and control over the crops "sufficient to establish a duty on its part to use reasonable care in preserving the [crops]." 239 Kan. at 156–57, 718 P.2d at 1296. Here, there is no allegation that Defendant exercised dominion or control over the crops; i.e., there has been no allegation of possession. The Court finds the Renterias have failed to state a claim upon which relief can be granted based on negligently impairing the collateral.

*Crop Year 2002*

The Renterias having failed to state a claim for relief based on Defendant negligently impairing the collateral in 2001, the Renterias cannot state a claim that their inability to obtain loans for the 2002 crop year is attributable to any breach of duty by Defendant.

After an independent review, IT IS ORDERED:

1. The Report and Recommendation [Doc. # 25] is ADOPTED;

Defendant's Motion to Dismiss [Doc. # 9] is GRANTED in part;

3. All claims related to crop year 2000 are DISMISSED;

4. The claim that Defendant negligently loaned money in crop year 2001 is DISMISSED;

5. The claim that the Renterias' inability to obtain a loan for the 2002 crop year was caused by Defendant is DISMISSED;

6. The Renterias' claim related to Defendant's negligent failure to timely disburse funds to allow herbicide treatment for the 2001 crop year and the Renterias' claim that FSA failed to timely distribute funds for the crop year 2002 survive the Motion to Dismiss, and;

7. This matter is referred back to Magistrate Judge Charles R. Pyle for further pretrial proceedings and report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) and L.R.Civ.P. 72.1 and 72.2.

## REPORT AND RECOMMENDATION

PYLE, United States Magistrate Judge.

Plaintiffs Sergio and Sandra Renteria (hereafter "Renterias") allege that the Farm Services Agency (hereafter "FSA") negligently processed their loan application, and they were harmed as a result. Defendant, United States of America, (hereafter "Defendant") moves to dismiss the complaint for lack of subject matter jurisdiction. The Renterias oppose the motion. For reasons that follow, the Court recommends that the District Judge, after her independent review, GRANT the Motion To Dismiss [Dkt 9]in part and DENY in part.

While there are several parts to Defendant's motion, the determinative issue is whether the Renterias' Complaint states a cause of action for tort under Arizona law. The Renterias assert that the Good Sa-

---

**3.** Arizona does appear to recognize the principle of "pledge" through A.R. S. § 47–9207. *See* Douglas S. John, *Ariz. Legal Forms, Commercial Transactions* § 9.98 (2d ed.) ("A se-

cured party in possession of collateral before default is a kind of bailee pledgee)". However, as stated, there is no allegation of possession in this case.

maritan Doctrine imposed a duty on FSA to use reasonable care in processing the loan. Defendant alleges that the Doctrine is inapplicable.

## I. FACTS

While the facts of this case are convoluted, they can be divided into three crop years: 2000, 2001 and 2002. In 1999, the Renterias investigated a farming operation in Willcox, Arizona. Complaint, ¶ 8. In 2000, after being turned down for FSA guaranteed loans from private banks [1], the Renterias applied for acquisition and operating loans from FSA. *(Id.* ¶ 17) The critical facts alleged are:

> Although Mr. Renteria had applied for his loans in September of 1999, his loans were not approved until September 2000, causing him to lose an entire year of production and its associated income. Mr. Renteria was told the first application had expired. Mr. Renteria replaced it. He then was told the replacement application was lost. Plaintiffs had to create a third set of new loan applications. The third set of applications was denied by the County FSA Committee upon improper staff advice.

*Id.* ¶ 18.

The Complaint also states that FSA employees gave the Renterias incorrect directives or no advice at all. Complaint, ¶¶ 19, 20, 21. Despite this, the Renterias were ultimately able to obtain the loan, apparently in September 2000. However, they lost out on "an entire operating cycle and a year's potential income." Complaint, ¶ 21.

For crop year 2001, the Renterias assert that FSA's failure to timely distribute loan proceeds required the chili crop to be manually weeded, instead of chemically through an herbicide. *Id.* ¶ 22. Critical to the failure to timely distribute loan proceeds was FSA employee David Toll's failure to "timely process the change in plans for a chili crop." *Id.,* ¶ 29. Apparently, the same day of the dispute regarding the change in crop approval, a heavy rainfall occurred making the herbicide option moot. *Id.* ¶¶ 27, 28, 29. It cost the Renterias $60,000 to manually weed the chili crop. *Id.* ¶ 30.

Ultimately, the crop failed, not because of the weeds, but because of herbicide residue that pre-existed the Renterias' purchase of the land. *Id.* ¶¶ 31, 32. Regarding the 2001 crop, the Renterias allege:

> FSA's David Toll knew about the herbicide residue in the ground. Mr. Toll made material representations to Plaintiffs by telling them that he thought there was a history of "chili disease" on the property. Plaintiffs checked and discovered that there was no such history. If Mr. Toll had revealed the true basis for his suggestion not to plant chilies, Plaintiffs would not have done so. A truthful disclosure would also have saved Plaintiffs the wasted investment in a crop that had to be abandoned.

*Id.* ¶ 34.

The chili crop was declared a failure on July 19, 2001, after which the Renterias notified FSA they would need loan servicing or emergency loans. As these were not forthcoming, the Renterias filed for bankruptcy. *Id.* ¶ 35.

As a result of these problems, the Renterias were unable to get operating

---

1. The Renterias complained that misrepresentations by FSA employees caused the loan denials. Those misrepresentations are not actionable under the Fair Tort Claim Act. 28 U.S.C. § 2680(h).

loans from FSA or other lenders for the following crop year, 2002. *Id.* ¶ 38. The Renterias claim $1,525,157.00 in lost profits for that year. *Id.* ¶ 39.

In the fall of 2002, the Renterias were unable to plant alfalfa on a leased farm because of the bankruptcy court order allowing the release of the FSA funds (AMTA payments). *Id.* ¶ 40–46. Payment was not received until December, which was far too late to plant alfalfa.

The Renterias concede that if Defendant did not have a duty under Arizona law based on the Good Samaritan Doctrine, they lose their lawsuit. They also assert that FSA was negligent in two respects:

1) FSA processed the loan in a negligent fashion; and

2) FSA approved the loan to plant certain crops knowing that the crop would fail.

Defendant asserts that the Good Samaritan Doctrine in Arizona only applies to inspection services related to public safety and to government activities with no private analogue. Defendant also argues that the Renterias are in effect complaining about misrepresentations by Mr. Toll and others; such complaints are not actionable under Federal Torts Claim Act. 28 U.S.C. § 2680(h).

## II. LAW

The question of whether there is a legal duty to act or refrain from acting is a threshold issue in any lawsuit, one that is appropriately raised by a motion to dismiss authorized under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (hereafter "Rules").

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact. *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Federation of African Amer. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir.1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. *Thornhill,* 594 F.2d at 733.

A plaintiff has the burden of proving that jurisdiction does in fact exist. *Thornhill,* 594 F.2d at 733. Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Rosenbaum v. Syntex Corp.,* 95 F.3d 922, 926 (9th Cir.1996).

A motion to dismiss under Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." In these instances, review is limited to the contents of the complaint. *Campanelli v. Bockrath,* 100 F.3d 1476, 1479 (9th Cir.1996). Such a motion may also be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as absolute immunity or the statute of limitations. 2A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice,* ¶ 12.07 at 12–68 to 12–69 (2d ed. 1991 & Supp. 1191–92) citing *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Under the Federal Tort Claims Act (hereafter "FTCA"), subject to certain

statutory exceptions and limitations, the United States is liable in tort "in the same manner and to the same extent as a private individual in like circumstances." 28 U.S.C. § 2674. Exclusive subject matter jurisdiction is accorded to the federal district courts for civil actions for money damages:

> ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

Defendant asserts that the Good Samaritan Doctrine only applies to physical safety cases. Citing *Love v. United States,* 915 F.2d 1242 (9th Cir.1990). In *Love,* the court acknowledged that Montana recognized the Good Samaritan Doctrine and observed it is "typically" applied to inspection services related to physical safety. *Love,* 915 F.2d at 1248. In *Love,* economic harm resulted from the foreclosure on a Farmers Home Administration loan. The Court of Appeals upheld the dismissal of the Good Samaritan claim because "(p)hysical safety was not implicated". *Id.*

The FTCA explicitly recognizes that there is no uniform circuit law on torts, but rather the law of the state where the action arose controls. 28 U.S.C. § 1346(b), § 2674. In many states, courts apply the Good Samaritan Doctrine only to physical harms to person or property, not to pure economic harm. *Shaner v. United States,* 976 F.2d 990, 994 (6th Cir.1992) (Ohio Law); *St. Denis v. Department of Housing and Urban Development,* 900 F.Supp. 1194, 1203–04, (D.Alaska 1995) (Alaska law); *Audio Odyssey Ltd. v. United States,* 243 F.Supp.2d 951, 965 (S.D.Iowa 2003) (Iowa law). Arizona courts hold otherwise, "[t]he volunteer may be liable for economic harm as well as physical harm." *Lloyd v. State Farm Mutual Auto. Insurance Co.,* 176 Ariz. 247, 250, 860 P.2d 1300, 1303 (App.1992). In this case, the fact that a safety inspection is not at issue, does not preclude recovery.

Defendant also argues that the Good Samaritan Doctrine only applies to hold a government entity liable in situations where the activity in issue has no private sector analogue; the present action then, is precluded because the private sector provides commercial loans to farmers. The sole authority cited for this position is Judge Kozinski's *dissent* to the certification of a question to the Arizona Supreme Court in *Carroll v. United States,* 923 F.2d 752 (9th Cir.1991). In *Carroll,* Judge Kozinski noted that the Good Samaritan Doctrine "normally" is only applied by the federal government for activities that have no private sector analogue. *Id.* at 753. Obviously, a dissenting opinion has no precedential value. Moreover, the notion that liability only incurs where there is no private sector analogue is contrary to the explicit directive of the FTCA that liability attaches in instances where a private person would be liable. 28 U.S.C. § 1346(b). Additionally, the Supreme Court specifically instructed the federal courts to look for a private person analogy in a federal mine safety inspection case. *United States v. Olson,* 546 U.S. 43, 126 S.Ct. 510, 513, 163 L.Ed.2d 306 (2005). Defendant's argument that because a private analogue (commercial banking) exists, the claim fails, is unavailing.

The question remains whether Arizona law applies the Good Samaritan Doctrine to the facts of this case. In essence, the question which was certified to the Arizona

Supreme Court in *Carroll,* and to date remains unanswered, needs to be resolved in this case.

The Good Samaritan Doctrine, states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement of Torts, Second, § 323.

The Court must apply this doctrine to two separate circumstances in this case: the processing of the Renterias' loan application; and the distribution of funds for their approved loan. The complaint, as drafted, necessitates that the Court analyze the Renterias' claims by crop year.

### 1. *CROP YEAR 2000*

The Renterias applied for acquisition and operating loans from FSA in September 1999, but the loans were not approved until September 2000. *Id.* ¶ 18. As a result, the Renterias missed the entire 2000 crop year and lost a full year's potential income. *Id.* ¶ 21. The Renterias allege that FSA was negligent in processing the loan application. *Id.* ¶¶ 19, 20, 21.

While the Renterias concede that initially FSA had no duty to accept their loan applications, they argue that once FSA accepted their application, it had the obligation to use reasonable care in processing their loan. As support, the Renterias cite Restatement of Torts.

While § 323 does establish a duty on those who gratuitously render service to another, the harm that is suffered must be "because of the other's reliance upon the undertaking." Restatement (Second) of Torts, § 323(b). In *Florida Auto Auction of Orlando, Inc. v. United States,* 74 F.3d 498 (4th Cir.1996), auto auction companies sued the Federal Government on theories of negligence and conversion because customs officials allowed automobiles to be exported without presentment of a certificate of title as required by federal regulation. The court found no evidence that the auto auction companies relied on customs officials to enforce the certificate of title requirement to protect their interest. *Florida Auto Auction of Orlando, Inc.,* 74 F.3d at 505. Thus, the negligence claim based on the Good Samaritan Doctrine failed. See also, *Moody v. United States,* 774 F.2d 150, 156–57 (6th Cir.1985) (Farmers Home Administration housing loan inspection regulations explicitly enacted to protect the government thus, precluding the borrowers reliance thereon.).

This need for reliance is emphasized not only in the explicit language of § 323, but also in the comments to the Restatement:

The Institute expresses no opinion as to whether: (1) the making of a contract, or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this section.

See also, § 323, comment d.

In September 1999, the Renterias applied for acquisition and operating expense loans. No doubt they expected the loan applications to be approved promptly. The Renterias, however, were *not* legally entitled to rely on those expectations. FSA could have denied their application in September 2000, or earlier, leaving the Renterias with no claim, whatsoever, for damages. In fact, their loan could have

even been approved, but not immediately funded, due to a lack of sufficient funds within the Agency. 7 U.S.C. § 1983a(4). Pragmatically, the Renterias could not rely on the loan proceeds for their business until the loan was in some way approved, as opposed to being denied or placed in pending status due to lack of funds. Since this approval did not occur until it was too late to plant crops for the 2000 crop year, the Renterias reasonable reliance in the efforts made by the FSA cannot be established. The Court finds that the Renterias have stated no claim for crop year 2000.

### 2. CROP YEAR 2001

 The Renterias complain that they suffered damages because the loan proceeds were not timely distributed. They also allege that FSA did not advise them of a herbicide residue that would likely lead to the failure of the planned chili crop. The late distribution of the loan proceeds apparently caused the Renterias to incur $60,000 in labor costs to manually weed the crop. (The offset for the cost of the unapplied herbicide is not indicated in the Complaint.) Manual weeding did not affect the success of the crop. Rather, the herbicide residue problem caused the loss of the entire crop.

As discussed above, the point when the loan is approved was the first time the Renterias could reasonably rely on the efforts of FSA to distribute the loan timely. The facts alleged in the Complaint do not sufficiently apprise the Court that the Renterias reasonably relied on FSA's loan processing efforts. Nor do the facts indicate that the loan distribution was indeed untimely. However, a claim for relief on the issue of the cost of manually weeding the crop is stated.

 With respect to the issue that the herbicide residue caused the chili crop to fail, while sounding as a misrepresentation claim, can be legitimately stated as a claim for failing to use reasonable efforts in processing the loan. The Renterias theorize that FSA negligently approved their loans knowing that the chili crop would fail due to the herbicide residue. In effect, the FSA approved a loan it knew could not be repaid. Defendant attempts to segregate the misrepresentation element of these events from the loan processing elements:

> In this regard, defendant is incorrect that plaintiffs' claim is based on its agent's failure to disclose herbicide residue on plaintiffs' property. Regardless of whether or not defendant, through its agents, chose to disclose the presence of herbicide residue, and regardless of whether it had a duty to do so, defendant was negligent if it approved a loan knowing that it could not be repaid and thereafter instituted collection efforts against plaintiffs, causing them to file for bankruptcy. In other words, defendant's had a duty to follow basic lending practices in approving loans to individuals not able to repay them or where defendant knew, as is alleged here, that the collateral would likely be impaired. This duty is unrelated to the reason for the applicant's ineligibility for a loan, whether it be an unknown condition about the property or poor creditworthiness.

Defendant's Response, p. 7, fn. 3.

Given the pernicious practices of payday lenders and real estate speculators lending money to those in danger of mortgage defaults, the world might well be a better place if lenders had a duty to the borrower to determine the borrower's ability to repay the loan. No such duty exists. The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's. Here again, the missing

element is reliance. The Renterias cannot establish any right to reasonably rely on FSA's determination of their ability to repay the loan. Rather, the Renterias had to rely on their own judgment and risk assessment to determine whether or not to accept the loan.

The Court finds that the claim that FSA negligently loaned money to the Renterias fails for lack of a duty. Therefore, the claims related to the failed 2001 crop year and the defaulted loans must be dismissed.

This determination does not negate the claim for the increased expenses for the manual weeding. Those increased expenses would still be a harm to the Plaintiffs regardless of whether the crop was ultimately successful.

### 3. CROP YEAR 2002

The Renterias argue that the loan default in 2001 caused them to be unable to obtain loans for the 2002 crop year. As discussed above, FSA had no duty to prevent the Renterias from entering into and ultimately defaulting on the 2001 crop year loans. As a result, the Renterias' inability to obtain loans for the 2002 crop year is not attributable to any breach of a duty by FSA. The Court finds that the claim for lost profits for the 2002 crop year must be dismissed.

Additionally, the Renterias' claim that they were unable to plant alfalfa on a leased farm in the Fall of 2002. The allegations of the Complaint, [¶¶ 40–46] indicate that the Renterias had been approved for AMTA payments to be used for planting alfalfa on Mr. Hardy's farm. The Renterias claim that FSA was negligent in contacting Mr. Hardy and in communicating the need for a bankruptcy court order authorizing FSA to distribute the AMTA payments. Because these AMTA payments apparently had been approved, The Renterias could rely on FSA to use rea-sonable efforts to timely distribute those funds. The Court finds that, this claim survives the Defendant's Motion To Dismiss.

Therefore, it is the Report and Recommendation of this Court that the District Judge, after her independent review of the Record enter an order as follows:

1. GRANT Defendant's Motion To Dismiss [Dkt 9] in part and DENY in part.

2. That Plaintiffs' claim related to FSA's negligent failure to timely disburse funds to allow herbicide treatment for the 2001 crop year and alfalfa seeding on the leased farm in the 2002 crop year survives the Motion To Dismiss.

3. That all other claims are dismissed for failure to state a claim on which relief can be granted.

4. That the caption is amended to designate the Defendant solely as the United States of America.

5. A Scheduling Conference is set for *MONDAY, JULY 5, 2006, AT 1:30 P.M.* The conference will be conducted in Judge Pyle's Chambers [Chambers 5660].

Pursuant to 28 U.S.C. § 636(b), the parties have ten (10) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections filed should be filed as CV 05–00532–TUC–CKJ.

May 15, 2006.