396 P.2d 609

Wendell T. DECKER and Oleta E. Decker, husband and wife, Claude C. Simmonds and Myrtle E. Simmonds, husband and wife, and Arizona Moving & Storage Company, an Arizona Corporation, Appellants,

v.

John B. HENDRICKS and Anna M. Hendricks, husband and wife, et al., Appellees.

No. 7173.

Supreme Court of Arizona.

En Banc.

Nov. 13, 1964.

## 38

John P. Collins, Tucson, for appellants.

Goddard & Barry, Tucson, for appellees.

STRUCKMEYER, Justice.

Appellees are owners of property in Wilmot Desert Estates, a subdivision near Tucson, in Pima County, Arizona. They brought suit against appellants, seeking to have appellants vacate, abandon and remove a warehouse building in violation of certain subdivision restrictions. The superior court granted a mandatory injunction directing the removal of the building.

In 1946, the developers of Wilmot Desert Estates filed a Declaration of Establishment of Conditions, Restrictions and Reservations, approved by the Board of Supervisors, on their Lots Five through Twelve, being approximately a quarter section of desert land. This property remained up to the time of trial principally desert with only a few homes having been built. It is bordered on the north by Speedway, a principal arterial boulevard in Tucson and Pima County, Arizona.

The first restriction provided:

"1. All said property shall be used for residential property only except that portion fronting on Speedway with a depth of 200 ft., which may be used for neighborhood retail business purposes."

Appellees Hendricks are the owners of and reside on the south 110 feet of the east 145 feet of Lot Five. The appellees LeVines own thirteen resubdivided lots in the west half of the Wilmot Desert Estates in Lot Six. Other appellees own various portions of Lots Five and Six. Appellants are the owners of the south 200 feet of the north 400 feet of Lot Five. Appellants' property is 200 feet in depth from north to south and is south of and contiguous to the 200 feet frontage on which "neighborhood retail" businesses may be established.

The Deckers purchased the property from Simmonds, a real estate agent, on August 23, 1957. Construction of a bowling alley and cocktail lounge commenced on September 11, 1957, but terminated about three weeks later when Decker was informed by the attorney for the mortgagees that there were restrictions on the property. Not only was the building in violation of the use restriction, but it was also built to a depth of 300 feet from Speedway. Since Decker had made financial commitments to various contractors, he purchased another site without restrictions several blocks from Lot Five along Speedway and transferred the construction contracts to that property. Decker had then spent approximately $9,000

for labor and material in laying foundations and erecting walls.

Decker recommenced construction on Lot Five about six months later, on April 17, 1958, intending to modify the building to a warehouse to be leased to appellant, Arizona Moving & Storage Company. About this time, Simmonds bought back a one-half interest in the Lot Five property and became a co-developer with Decker. On May 8, 1958, appellees commenced this action. Decker and Simmonds continued construction and in late July of 1958 completed the building at a cost of approximately $60,000.

Error is first assigned by reason of the court's failure to apply the equitable doctrines of laches and estoppel as a matter of law against appellees.

■ It is well established that relief against restrictions will be denied a party guilty of laches in pressing a suit against one violating the restrictions sought to be enforced. Gage v. Schavoir, 100 Conn. 652, 124 A. 535; Brandenburg v. Country Club Building Corporation, 332 Ill. 136, 163 N.E. 440; 5 Restatement, Property § 562; see generally Clark, Real Covenants and Other Interest Which Run with Land (2nd Ed. 1947) 184–186.

■ Two elements are necessary to constitute laches: (1) Lack of diligence on the part of plaintiff; (2) injury to defendant due to such lack of diligence. Day v. Wis-wall's Estate, 93 Ariz. 400, 381 P.2d 217; Felix v. Superior Court of County of Pima, 92 Ariz. 247, 375 P.2d 730; Kengla v. Stewart, 82 Ariz. 365, 313 P.2d 424. While lapse of time is an essential element of laches, the length of time must necessarily depend on the circumstances of each case. Appellants urge that the appellees delayed in commencing their suit from September 11, 1957, the date construction started, until May 8, 1958, and due to this lack of diligence appellants incurred large expenses in the construction and modification of the building. But we do not think a detailed examination of the facts supports appellants' position.

■ As stated, Decker began construction of a bowling alley and cocktail lounge in September of 1957. At that time a sign was placed on the property indicating the nature of the proposed construction. The construction terminated about three weeks later. By terminating construction and choosing another site for the bowling alley and cocktail lounge, appellees could have reasonably assumed that appellant Decker recognized and respected the restrictions and hence took no further steps to protest further construction. Thereafter, when appellants recommenced construction on April 17, 1958, only three weeks elapsed before appellees brought this action. The trial court could have believed that under the circumstances this was not an unreasonable

delay or such a lack of diligence as would deprive appellees of their rights.

■ The three elements of estoppel are (1) affirmative acts inconsistent with a claim afterwards relied upon, (2) action by a party relying on such conduct and (3) injury to the party resulting from a repudiation of such conduct. Holmes v. Graves, 83 Ariz. 174, 318 P.2d 354. The distinction often drawn between laches and estoppel is that the former is synonymous with nonaction and the latter with positive conduct misleading another.

■ The evidence discloses that originally Hendricks offered to supply water to Decker in aid of the construction of the bowling alley and cocktail lounge. It is urged that this amounts to consent by Hendricks to such construction. But even if this were sufficient to constitute an estoppel, of which we express doubts, it would not affect the right of the other subdivision property owners who later joined with Hendricks as plaintiffs in the action.

■ Appellants assign that the trial court erred by refusing to admit evidence of rapid and radical changes in the character of the neighborhood adjacent to the restricted property. This assignment is predicated upon the allegation of the third affirmative defense of appellants' answer to the effect that the neighborhood surrounding the property involved has so changed that the purpose of the restriction can no longer be accomplished. It is argued that this evidence when added to a change in zoning, which reflects expert opinion as to the best use of the property, creates a situation leading to a denial of injunctive relief. We think that zoning changes would be some evidence as to the most economical use to which the property could be put, but that is not the controlling fact here. Appellants ignore the evidence established by their aerial photograph, defendants' exhibit C, and appellees' aerial photographs, plaintiffs' exhibits 2, 3 and 4, which clearly portray Lots Five and Six of Wilmot Desert Estates and the surrounding area.

■■ On an objection to a portion of the testimony of one of appellants' expert witnesses, appellants offered to prove that across the street from their warehouse was a miniature golf course and a dance hall, that one block further east was a large shopping center, that across Speedway to the north and approximately one block to the west was a large bowling alley and a small animal hospital. This offer of proof was refused in part for the reason that the changes from residential to business were not within the restricted area. Counsel for appellants at the time of the offer stated to the court that he believed he could show by a witness's testimony and by law that the trial judge could take into consideration what had happened on the fringe of the area in question in deciding whether a mandatory injunction should issue to prevent the use

of the property for warehouse purposes. Counsel did not propose in his offer to show radical or fundamental changes as would tend to frustrate the original purposes of the restriction. This state follows the general rule that equity will enforce the terms of restrictive covenants unless the changes in the surrounding areas are so fundamental or radical as to defeat or frustrate the original purposes of the restrictions. Murphey v. Gray, 84 Ariz. 299, 327 P.2d 751; Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132; see cases collected in 4 A.L.R.2d 1111; 5 Restatement, Property § 564, Comment c; 33 Harv. L.Rev. 813, 821. The trial court did not commit reversible error because the evidence would only have established that there were some businesses existing along Speedway and not that there were radical or fundamental changes which would defeat or frustrate the original purposes of the restriction.

As their final assignment of error, appellants contend that the granting of injunctive relief results in damage and hardship to them out of all proportion to any benefits to be gained by appellees. It is true that in cases of this nature courts are motivated by such matters as comparative value and consider relative hardship by weighing the interest of both sides. Bauby v. Krasow, 107 Conn. 109, 139 A. 508; Forstmann v. Joray Holding Co., 244 N.Y. 22, 154 N.E. 652, 5 Restatement, Property

§ 563. But no court will allow the perpetrator of a wrong to rely upon the contention of relative hardship. That appellants are intentional wrongdoers is clear from the following testimony. Decker testified:

"* * * Knowing you couldn't build a warehouse there, why did you do it?

"A Because I had so much money in it that I couldn't do otherwise, I had to finish it."

Simmonds testified:

"Q Were you aware that a warehouse was equally prohibited under the restrictions?

"A That I heard that they were.

"Q And yet you signed a lease, leasing it to the warehouse company?

"A Yes.

"Q Why did you sign the lease then if you felt that it was, could not be done, Mr. Simmonds?

"A Well, let's put it this way, I had a terrific financial investment in that property and practically everything that I owned was in it. You are going to try to salvage and do something with that, are you not?

* * * * * *

"Q So you were trying to make the most of a bad situation then?

"A That's right."

Equitable remedies are a matter of grace and not of right and equitable discretion

should not be used to protect an intentional wrongdoer. We find no abuse of discretion in the trial court's judgment.

As the case now stands we order that the judgment be affirmed, but in view of changing conditions this judgment should not be deemed to be *res judicata* as to a state of facts which may have occurred since the trial or might arise in the future. Empire Boulevard Builders, Inc., v. Spohn, 235 App.Div. 497, 257 N.Y.S. 541, 543.

Judgment affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and BERNSTEIN and SCRUGGS, JJ., concur.