710 P.2d 1056

**Melodie L. McCUTCHEN aka Melodie L. York, Plaintiff/Appellant,**

v.

**Jerry HILL, Sheriff of Maricopa County, and Deputy Gregory Williams, Deputy Sheriff of Maricopa County; Transamerica Insurance Company, a California corporation, Defendants/Appellees.**

**No. 18212–PR.**

Supreme Court of Arizona, En Banc.

Dec. 10, 1985.

Mahoney, Lehman, Rood & Rempe, P.C., by John Rood, Phoenix, for plaintiff/appellant.

Roderick MacMillan, Deputy Maricopa County Atty., Phoenix, for defendants/appellees.

FELDMAN, Justice.

We have accepted review of this matter primarily to interpret an ambiguity in Rule 59, Ariz.R.Civ.P., 16 A.R.S. Review was granted pursuant to Rule 23, Ariz.R.Civ. App.P., 17A A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

The important facts are not in dispute. On March 5, 1973, a decree dissolving the marriage of Mr. and Mrs. York was entered by the Maricopa County Superior Court. Mr. York was ordered to pay $100 per month child support. However, shortly after the order was entered he moved to Texas and ceased making regular payments. On September 6, 1979, Mrs. McCutchen (petitioner), the former Mrs. York, filed an application in the superior court for the issuance of a writ of *ne exeat*. The application was based on information that Mr. York would soon be coming to Phoenix to receive an inheritance of $5,000. At that time, Mr. York was at least $2,700 in arrears on his support obligations. The writ which issued required the sheriff to apprehend Mr. York and required that York post a $3,000 bond in order to obtain his release prior to a show cause hearing scheduled for October 1, 1979.

On Friday, September 11, Mr. York, accompanied by his second wife, was taken into custody in Phoenix on the writ of *ne exeat*. He had the inheritance check in his possession. Mr. York was brought before Judge Rozar in the custody of Deputy Sheriff Gregory Williams. York explained to Judge Rozar that he did not have cash with which to post the $3,000 bond. By agreement between York and petitioner's counsel, the bond was reduced to $2,000. It was late Friday afternoon and, therefore, likely that York would have to spend

the weekend in the Maricopa County Jail because the writ would prevent his release until the inheritance check was cashed and bond posted. In an attempt to keep York out of jail for the weekend, the new Mrs. York was advised to go cash the inheritance check. The judge proposed in the interim to sign a release order before the bond was posted but have the deputy hold the order until the cash was actually deposited with the sheriff. This pragmatic solution allowed the court to recess for the weekend, the bond to be posted after the recess and Mr. York to be released without having to reside in jail for the weekend. The judge stated: "I'll sign a release now and you [York] won't have to come back if you [Deputy Williams] hold it [the release]." The deputy responded by saying, "That's fine."

The judge then signed the order of release and gave it to the deputy. Williams returned York to the main jail, gave the release order to the detention officers and proceeded on with his duties. Shortly thereafter, without paying the cash bond, York was released by the detention officers pursuant to the release order, which explicitly stated that the cash bond had already been paid. Deputy Williams contributed to this unhappy event by doing exactly the opposite of what he had undertaken—he failed to hold the release order and also failed to tell the detention officers about the oral condition "attached" by the judge. At trial, Williams stated that in his many years as a deputy, he had never seen a written order varied by an oral condition. He said that he had looked at the release order signed by the judge but had not read it carefully; he had assumed that the conditions for the release were on the written order. In fact, they were not because the order was a standard short form which read:

> IT IS HEREBY ORDERED that the defendant in the above-entitled cause be released from custody, having furnished bond in the sum of $2,000.

The judge's signature followed.

As might be expected, Mr. York failed to appear at the October 1 show cause hearing. At that time Judge Pickrell signed an order holding Mr. York in contempt for failing to make child support payments. Judgment was entered against York in the amount of $2,700, plus interest and attorneys' fees. The judgment allowed a credit for the $2,000 cash bond which the new judge assumed had been posted in connection with York's release. It was at this time that petitioner's counsel first discovered that the $2,000 bond had never been posted. The judgment was later modified by deleting the paragraph allowing the credit for $2,000.

In 1980, petitioner filed a negligence action seeking $2,000 in damages from the Maricopa County Sheriff, Deputy Williams and the sheriff's surety. The case was tried to the court, without a jury. The trial judge found "that there was a duty owed to plaintiff by defendant and that there was a breach of said duty." However, the court held that petitioner had failed to prove damage and entered judgment for the defendants. Petitioner filed a motion for a new trial pursuant to Rule 59(a)(8), Ariz.R.Civ.P., 16 A.R.S. and moved in the alternative to allow additional evidence pursuant to Rule 59(b). The trial court denied the motion and petitioner appealed the judgment. The defendants cross-appealed from the finding that Deputy Williams had been negligent, arguing that the deputy had no duty to the petitioner. The court of appeals affirmed the judgment entered in favor of the defendants on the basis of a lack of duty and never reached the Rule 59 issue. *McCutchen v. Hill*, Memo. Dec., # 1 CA–CIV 6945, filed April 11, 1985.

## NEGLIGENCE

■ Duty is not an issue in this case. Deputy Williams had no duty to act contrary to the court's order. The sheriff and his deputies, officers of the court, have a duty to obey all lawful orders of the court. *Merrill v. Phelps*, 52 Ariz. 526, 531–33, 84 P.2d 74, 77 (1938); A.R.S. § 11–441(A)(4)(1977). This was clearly recognized by the trial judge whose minute entry

of October 13 properly indicated that the "key to the duty issue" was the officer's undertaking to follow the judge's oral orders. The trial court found that the sheriff had indicated he had heard the instructions and would follow them and that the officer, as a reasonable person, should have understood those instructions and could have followed them. The court continued:

> Officer Williams owed no duty to plaintiff, or to do anything other than transport Mr. York to the jail with Judge Rozar's release order until he answered "that's fine" in response to Judge Rozar's statement....

The trial court held that Deputy Williams was negligent for having misunderstood the judge or having acted contrary to the judge's instructions.

The court of appeals held, however, that the sheriff's undertaking was "insufficient as a matter of law to create a duty in contradiction of the express written order." This would indeed be a difficult issue to resolve, but it is not the issue presented. Judge Rozar did not order the sheriff to do something in contravention of his written order. The judge asked the sheriff to hold the order, and not file it, thereby postponing its effectiveness until the bond was posted. This the sheriff undertook to do. We believe the trial judge was correct in finding a duty was thereby assumed.

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if ...
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts, § 323 (1965). The deputy's personal agreement to hold the release order until the money was paid gave rise to "the duty to use proper care in the performance of the task" assumed. W. Prosser and W. Keeton, LAW OF TORTS § 56 at 379–80 (5th ed. 1984). In holding a sheriff liable for the acts of his deputies we have said, "If the act from which the injury resulted was an official act ... the sheriff is answerable.... [I]f he is acting under color of his office ... he and his sureties will be bound by such acts." *Chaudoin v. Fuller*, 67 Ariz. 144, 149–50, 192 P.2d 243, 247 (1948) quoting *Abbott v. Cooper*, 218 Cal. 425, 23 P.2d 1027, 1030 (1933) and *Johnson v. Williams*, 111 Ky. 289, 63 S.W. 759, 760 (1901).

There is a legitimate dispute over whether Deputy Williams should have known or understood what the court was asking of him. Whether a reasonable man in Deputy Williams' position would have or should have understood the court's instructions is a matter for the factfinder. The trial judge found against defendants on that issue and the record supports its finding of negligence. We believe the court of appeals erred with respect to this issue.

## OPENING OF THE JUDGMENT

It seems quite apparent that the release of Mr. York without bond damaged petitioner by exactly the amount she claimed in damages. Nevertheless, the trial judge found in favor of defendant on the damage issue. The judgment against York and the transcript of the *ne exeat* hearing were admitted in evidence at the trial; therefore petitioner did establish that as of September 11, 1979 the arrearages exceeded $2,000. The trial judge apparently thought that petitioner had the burden to negate the possibility that the errant husband had paid the arrearages in the time between his erroneous release from custody on September 11, 1979 and the commencement of the trial.

After entry of the order finding for defendants on the issue of damages plaintiff filed motions for a new trial under Rule 59(a) and to open the judgment to take additional testimony under Rule 59(b). Accompanying the motion was an affidavit from petitioner stating that no money had been received from Mr. York since September 11, 1979.

The parties argue at some length with regard to whether petitioner actually did

present evidence that the arrearages were still unpaid or whether payment is an affirmative defense in a negligence case. We do not believe these issues are dispositive. Taking the evidence in the light most favorable to the defendants, it is fair to say that the trial did focus upon the negligence issue; defense counsel himself indicated that the issues were duty and negligence and not damages or proximate cause. Defendants argue that counsel's statements "were not evidence but were remarks made in argument. The statements [are] not a waiver of [petitioner's] burden of proving the four elements of her negligence action." (Defendant's brief at 31.)

■ Assuming arguendo that defendants are correct, we are presented with a situation in which a party failed to offer an uncontroverted bit of evidence technically necessary to establish a claim or defense. After trial, learning for the first time that the judge had decided the case on an issue not argued by the parties, plaintiff moved in the alternative for a new trial or to open the judgment to supply the missing evidence. The trial judge denied the motion for new trial brought under Rule 59(a). We believe this was correct. Technical deficiencies in proof are not one of the eight grounds which warrant the grant of a new trial under Rule 59(a). The complete retrial of a case to supply a missing bit of evidence which a party could have offered but did not is highly inefficient. Occasional injustice may result from the need for efficiency and judicial economy.

■ However, the portion of Rule 59(b) which applies only to non-jury trials may provide an accommodation when the interests of efficiency and justice conflict. The relevant portion of the rule reads as follows:

> On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

In the case before us the trial judge denied relief under the quoted portion of Rule 59(b). He indicated in his minute entry order that he believed that the provisions of Rule 59(a) limited the court's power under Rule 59(b). In relevant part Rule 59(a) provides:

> 59(a) Procedure: grounds. A verdict, decision or judgment may be vacated and a new trial granted on motion of the aggrieved party for any of the following causes materially affecting his rights:
>
> 1. Irregularity in the proceedings of the court, ... whereby the moving party was deprived of a fair trial.
>
> 2. Misconduct of the jury or prevailing party.
>
> 3. Accident or surprise which could not have been prevented by ordinary prudence.
>
> 4. Material evidence, newly discovered....
>
> 5. Excessive or insufficient damages.
>
> 6. Error in the admission or rejection of evidence, error in the charge to the jury, ... or other errors of law....
>
> 7. That the verdict is the result of passion or prejudice.
>
> 8. That the verdict, decision, findings of fact, or judgment is not justified by the evidence or is contrary to law.

Are the eight grounds listed in Rule 59(a) a limitation on the court's Rule 59(b) power to open the judgment in a non-jury case? In the absence of case law, we believe this issue can be resolved only by considering both the purpose and the history of the rule as it relates to jury and non-jury trials. We note at the outset that the very nature of a jury trial is such that relief from issues decided by the jury is tightly circumscribed. It is obviously impossible to reopen after the jury has been discharged to take additional testimony which may bear upon the ultimate result. Even in a non-jury case, where the judge has greater discretion, the principle of finality remains as a backdrop to the judge's decision and is especially strong at this stage of the proceedings. This principle reflects the ancient policy of the law that judicially dis-

ruptive relief such as a new trial be unavailable unless stringent requirements are met.

In conformity with these concepts Rule 59(a) limits the court's power to grant a complete new trial in both the jury and non-jury context to the eight grounds specified in the rule. The policy is further reflected in the first sentence of Rule 59(b) which on the one hand gives the trial judge power to grant a limited new trial on "part of the issues in an action in which there has been a trial by jury," but on the other hand expressly states that such power can be exercised only for the reasons "for which [complete] new trials are authorized by law or rule of court," i.e. the eight grounds contained in Rule 59(a). However, the second sentence of Rule 59(b), which specifically addresses reopening in non-jury trials, does not contain the same limiting words.

We believe that the purpose of this final provision of Rule 59(b) is to provide flexibility. In actions tried to the court "there will be many times when proper relief" will demand "something far less than an actual new trial." J. Moore, MOORE'S FEDERAL PRACTICE § 59.07, at 76. Reopening empowers the court "in cases tried without a jury ... [to] do all on a rehearing that justice and necessity dictate...." *Id.* § 59.06 at 61. This provision of our Rule 59(b), is identical with the final sentence of Rule 59(a) Fed.R.Civ.Proc., 28 U.S.C. That portion of the federal rule has been construed as a recognition of the trial court's inherent power to manage its docket in an efficient and expeditious manner and to use its discretion to avoid technicalities which might cause a miscarriage of justice. 3 Barron & Holtzoff, FEDERAL PRACTICE & PROCEDURE (Wright ed. 1958) § 1323 at 396, citing to the 1954 Advisory Committee Report at 55; *DuPont v. United States,* 385 F.2d 780 (3d Cir.1967); *Moore v. United States,* 59 F.Supp. 660 (W.D.Ky.1945); *see also City of Phoenix v. Com/Systems, Inc.,* 706 F.2d 1033, 1036 (9th Cir.1983) (new trial granted to prevent fundamental unfairness or miscarriage of justice); *Greenwell v. Spellman,* 110 Ariz. 192, 194, 516 P.2d 328, 330 (1973).

Our investigation into the history of Rule 59 indicates that Rule 59(a) is statutory in origin, having been adopted in almost its present form as § 584 Rev.Stat.Ariz., (1913), taken at that time from § 4198 R.L. Minn. (1905). *See also,* § 21–1301, Ariz. Code Ann., (1939). However, the statutory grounds for new trial which eventually became Rule 59(a) contained no reopening provision at all. The reopening provision which now forms the second sentence of Rule 59(b) was adopted by this court in 1940 as Rule 59(a) Ariz.R.Civ.P., after earlier enactment as part of § 21–1304, Ariz. Code Ann. (1939). *See Rules of Civil Procedure for Arizona Superior Courts* (1939) (effective January 1, 1940). The last sentence of that statute was identical to the present last sentence of Rule 59(b). The Federal Rules of Civil Procedure were adopted by Congress just prior to the enactment of the statutory predecessor of the present 59(b). Rule 1 Fed.R.Civ.Proc. 28 U.S.C.A. at 174. Our Rule 59(b) was taken from Rule 59(a). Fed.R.Civ.Proc., *Rules for Superior Courts, supra,* Preface at 1. That rule had its origins in Federal Equity Rule 69. J. Hopkins, FEDERAL EQUITY RULES, 299 (1933); Advisory Committee on Rules for Civil Procedure, *Proposed Rules of Civil Procedure for the District Courts of the United States,* 148–49 (1937). The rule draws its force from the inherent power of the courts to do justice, provide equity for parties and control their dockets. T. Street, FEDERAL EQUITY PRACTICE §§ 2093, 2094, 2097, and 2098 (1909)

In view of the policy considerations and legislative history, we believe that distinct legal principles inform the trial court's decision to order a full or partial new trial as opposed to its power to open a judgment to take additional evidence in a non-jury trial. Rule 59(a) and the first part of Rule 59(b) govern the decision to order a full or partial new trial. The court's power to do this is limited to the eight grounds of Rule 59(a). The second sentence of Rule 59(b) has an independent basis, derived from equity, which allows the trial court broad discretion to act in the interests of justice.

The words of the third circuit in a case similar to the one before us are informative:

An application to open judgment and permit the taking of additional testimony with consequent amendment of findings of fact or the making of new findings of fact, necessarily invokes judicial discretion. The denial of relief therefore must be upheld on appeal unless there is a clear showing that there was no reasonable basis within the range of discretion for the action taken. [In this condemnation case] plaintiffs admittedly suffered loss in excess of what was allowed them by the government.... Plaintiffs were entitled to rely on the record as it was closed, and they could not have anticipated the subsequent rejection [by the judge] of the evidence on grounds of incompetency.... In these circumstances, therefore, after the court rejected Patterson's testimony, plaintiffs were entitled to an opportunity to offer additional evidence ... to supply the want of evidence which the court had declared existed. It is always desirable that a litigant's claim should be determined after the presentation of all the relevant evidence.... When the equitable considerations applicable to the respective parties are weighed, the strong merits of the plaintiff's application are met by no countervailing prejudice to the government. The cause of justice will be advanced with no prejudice to the government by affording plaintiffs an opportunity to supply the vacuum created by the post-trial determination of the legal insufficiency in their evidence.

*DuPont v. United States*, 385 F.2d at 783–84.

In the case before us, the trial judge denied petitioner's motion to open the judgment so that she could provide the evidence proving non-payment of arrearages subsequent to Mr. York's release. The ruling was made on the grounds that the judge had no discretion to consider the motion absent a showing of one of the eight factors specified in Rule 59(a). Under our interpretation of the rules, that was an incorrect legal conclusion. The record before us indicates that petitioner could marshal considerable factual and equitable support for reopening. The failure to supply the evidence which the court's post-trial order indicated was necessary might well be deemed a technical defect. We remand, therefore, for the trial judge to reconsider the motion under Rule 59(b) and to exercise his discretion with regard to the grant or denial of the motion to reopen. A statement of the reasons for his ruling would assist this court in the event either party seeks further review of his order.

The opinion of the court of appeals is vacated. The judgment is vacated. The order denying the motion to open is also vacated. The case is remanded for further proceedings not inconsistent with this opinion.

HOLOHAN, C.J., GORDON, Jr., V.C.J., and HAYS and CAMERON, JJ., concur.