IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| FLYING DIAMOND AIRPARK, LLC, an Arizona limited liability company, an Arizona non-profit corporation, | ) ) ) ) | 2 CA-CV 2006-0092 DEPARTMENT A |
| Plaintiff/Appellee, | ) ) ) | O P I N I O N |
| v. | ) ) | |
| JEFFREY A. MEIENBERG, an unmarried man, | ) ) ) | |
| Defendant/Appellant. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20045803

Honorable Charles V. Harrington, Judge

AFFIRMED

John A. Baade                                                         Tucson

   and

Tanis A. Duncan                                                      Tucson
Attorneys for Plaintiff/Appellee

Law Office of Ethan Steele, P.C.
  By Ethan Steele                                               Tucson
Attorney for Defendant/Appellant

H O W A R D, Presiding Judge.

¶1        Appellant Jeffrey Meienberg appeals from an order issuing a mandatory injunction[1] requiring him to reduce the height of a hangar he had built.  He argues the trial court erred by concluding Meienberg's violation of a restrictive covenant was intentional, failing to apply the doctrine of relative hardships, and failing to re-open the case for additional evidence regarding the hardship Meienberg would incur in complying with the injunction.  He also argues that appellee Flying Diamond Airpark, LLC, was estopped from enforcing the covenant.  Finding no error, we affirm.

**Background**

¶2        "'We view the facts in the light most favorable to sustaining the trial court's judgment.'" *Cimarron Foothills Cmty. Ass'n v. Kippen*, 206 Ariz. 455, ¶ 2, 79 P.3d 1214, 1216 (App. 2003), *quoting Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, ¶ 2, 36 P.3d 1208, 1210 (App. 2001).  Flying Diamond is an association of property owners in a development in which Meienberg owns property.  A recorded declaration of covenants, conditions, and restrictions (CC&Rs), referred to in Meienberg's deed, applies to his parcel.  Meienberg is a mandatory member of Flying Diamond, bound by the CC&Rs.

---

[1]Meienberg does not dispute that the judgment contains sufficient language to constitute an injunction.

¶3        The CC&Rs prohibit certain structures, including "structures of more than 22 foot height." In 2004, Meienberg began constructing a hangar on his property, using prefabricated parts. The hangar is equipped with three roof vents. Each vent is ten feet long, sixteen inches high, and two feet wide and attaches to the roof. The hangar's height from the ground to the top of the vents along the ridge of the hangar's roof exceeds twenty-two feet. As Meienberg now concedes, the hangar violates the height restriction by eight-and-three-quarter to ten-and-three-quarter inches.

¶4        After Meienberg ordered the parts for the building, but before construction began, Meienberg showed the plans for the hangar to Larry Bramhall, another property owner and association member. Bramhall, who had building experience, had been asked to serve on an architectural advisory committee that would "advise owners of [CC&R] violations prior to building." Submission of plans to that committee, however, was not mandatory, and the committee "would not approve or disapprove plans."

¶5        The plans Meienberg showed Bramhall did not include a measurement of the total height of the hangar and did not include the dimensions of the roof vents. Bramhall testified at trial that, given the height of the eaves and the roof's pitch, he determined the hangar's roof would not exceed twenty-two feet in height. But he also testified that "there was never any mention of roof vents." Bramhall ended the conversation by reminding Meienberg to be sure the building was not more than twenty-two feet tall.

3

¶6         After construction began, Bramhall saw the steel frame of the building and saw the roof vents lying on the ground. Bramhall informed Meienberg that, including the roof vents in the height calculation, the hangar would exceed the height restriction. He also told Meienberg that lower-profile vents that would not violate the restriction could be installed, and that he might be able to find a buyer for the higher-profile vents. Meienberg took the position that the vents should not have been included in the height calculation, and he continued construction.

¶7         Flying Diamond brought this action in the trial court, seeking an injunction requiring Meienberg to bring the hangar into compliance with the height restriction. The court held an evidentiary hearing, and the parties stipulated to have the court render a decision based on the testimony and evidence presented at that hearing, as well as legal memoranda filed by the parties. Meienberg argued that the hangar did not violate the restriction, that Flying Diamond was estopped from seeking injunctive relief, and that the hardship on Meienberg in complying with an injunction would outweigh any benefit to Flying Diamond.

¶8         The court concluded that the hangar violated the height restriction. It found that Meienberg was aware of the restriction, the violation of the restriction, and Flying Diamond's intention to enforce the restriction. It therefore concluded that Meienberg could not claim hardship or estoppel as defenses and that Flying Diamond was entitled to an

4

injunction. The court also awarded Flying Diamond attorney fees pursuant to a provision in the CC&Rs.

**Relative Hardships**

¶9    Meienberg contends the trial court erred in concluding that his violation of the height restriction was intentional, which would preclude it from considering the relative hardships to the parties in deciding whether to issue an injunction. We review a trial court's grant of injunctive relief for an abuse of discretion. *See Ahwatukee Custom Estates Mgmt. Ass'n v. Turner*, 196 Ariz. 631, ¶ 5, 2 P.3d 1276, 1279 (App. 2000). We defer to the court's findings of fact unless clearly erroneous, but we review de novo its legal conclusions. *See id.*

¶10    Equitable principles govern the enforcement of restrictive covenants by injunction. *See id.* ¶ 9. "Equitable considerations include the relative hardships and injustice; the public interest; misconduct of the parties, if any; delay on the part of the plaintiff; and the adequacy of other remedies." *Id.* But "[e]quitable remedies are a matter of grace and not of right and equitable discretion should not be used to protect an intentional wrongdoer." *Decker v. Hendricks*, 97 Ariz. 36, 41-42, 396 P.2d 609, 612 (1964).

¶11    Consistent with these principles, this court has held that it is not error to refuse to consider relative hardships where a party is aware of a restriction and of some homeowners' intent to enforce the restriction but nonetheless builds an offending structure.

5

*Camelback Del Este Homeowners Ass'n v. Warner*, 156 Ariz. 21, 26, 749 P.2d 930, 935 (App. 1987); *see also Burke v. Voicestream Wireless Corp. II*, 207 Ariz. 393, ¶¶ 28-29, 87 P.3d 81, 87 (App. 2004) (trial court erred by balancing hardships where party built structure knowing of restrictions and neighborhood opposition to structure). But the Arizona cases provide no clear definition of what makes a party an "intentional wrongdoer."

¶12 Meienberg contends his violation of the height restriction was "unintentional at the critical time that he ordered his hangar and reviewed the plans with Bramhall" and the trial court wrongly determined his intent as of a later time.[2] He claims his defenses "<u>were already established as historical fact</u>" at the time he reviewed the plans with Bramhall, and thus, the trial court should not have considered events occurring afterward in gauging his intent.

¶13 We know of no authority supporting Meienberg's argument, and he cites none. In fact, in the cases in which Arizona courts have considered whether a party who violates a restriction can claim hardship as an equitable defense, it does not appear to have been crucial that the property owner intended to violate the restriction from the outset. In *Burke*, for example, Voicestream intended to build a cellular telephone tower and claimed to have

---

[2]Meienberg also argues the trial court clearly erred in finding that he "had actual knowledge of his violation of the restrictive covenant regarding height restrictions on structures." But Meienberg does not dispute that he knew of the height restriction and completed construction of the hangar after Bramhall informed him that it would violate the restriction. As we will explain, this is sufficient to support the trial court's conclusion that Meienberg's violation was intentional; thus, he could not claim hardship. Accordingly, we need not address Meienberg's argument regarding this factual finding.

spent $100,000 on the project before property owners voiced opposition to the plan. 207 Ariz. 393, ¶¶ 4-5, 87 P.3d at 83. Voicestream then constructed the tower in violation of a restriction. *Id*. ¶ 7. Voicestream, as Meienberg did in this case, asserted, based on its interpretation of the restriction, that it did not believe the structure violated the restriction. *Id.* ¶ 12. This court held that Voicestream could not "claim hardship because [it] proceeded with the tower construction knowing of the Restrictions and that neighboring homeowners objected to the tower." *Id.* ¶ 28.

¶14 Similarly, in *Decker*, Decker began construction of a building but soon stopped after learning that it violated a restriction. 96 Ariz. at 38, 396 P.2d at 610. However, he later continued construction of the offending building, and property owners brought an action to enjoin the violation of the restriction. *Id.* at 38-39, 396 P.2d at 610. Decker admitted that he knew he had violated a restriction, but continued construction anyway because he "had so much money in it that [he] couldn't do otherwise." *Id.* at 41, 396 P.2d at 612. The court held that Decker could not rely on hardship because he was an "intentional wrongdoer." *Id.* at 42, 396 P.2d at 612.

¶15 Meienberg argues *Decker* is distinguishable because Decker expended a large amount of money after learning of the violation and then claimed hardship, whereas here, according to Meienberg, Meienberg "never made any . . . claim that because he decided to complete installation of his original vents despite Flying Diamond's objection, . . . this was a factor which added to his burden." But, here, as in *Decker*, Meienberg continued

7

construction despite knowing of a restriction. And, although the court in *Decker* emphasized Decker's expenditure of money after learning of the violation and his reasoning for his decision, *see Decker*, 96 Ariz. at 41, 396 P.2d at 612, this court in *Burke* merely stated that Voicestream could not claim hardship "[b]ecause [it] proceeded with construction knowing of the Restrictions and that several homeowners claimed that the tower was prohibited under the Restrictions." 207 Ariz. 393, ¶ 29, 87 P.3d at 87. Similarly, here, Meienberg proceeded to complete construction of an offending structure after learning from Bramhall that it violated a restriction.

¶16        Meienberg cites *Camelback Del Este Homeowners Ass'n* and *Swaggerty v. Petersen*, 572 P.2d 1309 (Or. 1977),[3] in support of his argument that a violation is intentional only if the violator incurs substantial expenditures after learning of the violation. But, although those cases may have involved expenditures of larger sums of money at different times, we do not believe these factual distinctions are sufficient to support a different result here. As discussed above, a party may not claim hardship where it knows of a restriction and completes construction in the face of neighborhood opposition. *See Burke*,

---

[3]Meienberg also cites *First Hyland Greens Ass'n v. Griffith*, 618 P.2d 745 (Colo. Ct. App. 1980), in support of this argument. But the court in *Griffith* did not address the issue of whether Griffith could claim hardship, but rather, whether there was a genuine issue of material fact as to whether the association was estopped from seeking injunctive relief. *Id.* at 747. Moreover, the appellate court affirmed the trial court's order enjoining continued construction of a structure violating a restriction. *Id.* Accordingly, *Griffith* does not help Meienberg.

8

207 Ariz. 393, ¶ 29, 87 P.3d at 87; *Camelback Del Este Homeowners Ass'n*, 156 Ariz. at 26, 749 P.2d at 935.

¶17 Cases from other jurisdictions support the conclusion that a person may not claim hardship if the person is aware of a restriction, begins construction of an offending structure, and completes construction after becoming aware of neighborhood opposition to the structure. In *Sandstrom v. Larsen*, 583 P.2d 971 (Haw. 1978), the Larsens lived in a community subject to a restriction that homes could not exceed one-and-one-half stories in height. *Id*. at 974. The Larsens were aware of the restriction. *Id.* at 974-75. After the Larsens' home was partially destroyed by fire, they began reconstructing it. *Id.* When it became clear to neighbors that the new home would be two stories in height, they requested that the Larsens "'cease construction until the issue of the height restriction [wa]s resolved.'" *Id.* at 975. The Larsens went on to complete construction. *Id.*

¶18 The trial court refused to consider relative hardships. *Id.* at 977. The Larsens argued on appeal that they were innocent parties because they relied on an architect's advice that the house would not violate the restriction. *Id.* at 978. The Hawaii Supreme Court rejected that argument and, without discussing the timing of any expenditures, stated that the trial court did not err by refusing to consider relative hardships. *Id.* It concluded that an injunction is the appropriate remedy "where a property owner 'deliberately and intentionally violates a valid express restriction . . . *or intentionally "takes a chance."'" Id., quoting Peters v. Davis*, 231 A.2d 748, 752 (Pa. 1967) (emphasis in *Sandstrom*).

9

¶19      Similarly, in *Gladstone v. Gregory*, 596 P.2d 491 (Nev. 1979), the Gregorys commenced construction of a second-story addition to their home in violation of a restriction limiting homes to one story in height. *Id.* at 493. Gladstone objected, but the Gregorys continued construction. *Id.* The Nevada Supreme Court reversed the trial court's denial of injunctive relief and noted that "[t]he equitable principle of relative hardship is available only to innocent parties who *proceed* without knowledge or warning that they are acting contrary to others' vested property rights." *Id.* at 495 (emphasis added); *see also Nonnenmann v. Lucky Stores, Inc.*, 368 N.E.2d 200, 204 (Ill. App. Ct. 1977) ("Since the violative improvements were completed in the face of plaintiff's assertion of right, and therefore must be considered to be intentional, we believe that we should not undertake a balancing of hardships under the circumstances as shown by the record in this case.").

¶20      In his reply brief, Meienberg cites *Drulard v. LeTourneau*, 593 P.2d 1118 (Or. 1979), in support of his position that the burden on him would outweigh any benefit to Flying Diamond. At oral argument in this court, he contended *Drulard* supports his position that the trial court should have considered the relative hardships in this case. But in *Drulard*, the court did not address whether the alleged violation of a restriction was intentional or innocent. *See id.* at 1122-23. Arizona law required the trial court to make such a determination. Accordingly, *Drulard* does not help Meienberg.

¶21      The case law, both in Arizona and in other jurisdictions, supports the conclusion that, where a party has actual or constructive notice of a restriction, knows or is

10

informed prior to actually violating the restriction that his structure will violate the restriction, and then completes construction of the structure, the party may not claim the benefit of relative hardships. Thus, although the amount of hardship, and the date it is incurred, may be relevant if the court reaches the balancing of the hardships determination, those factors are not relevant to a determination of the intent of the violator.

¶22 Were we to adopt Meienberg's argument, CC&Rs would become difficult to enforce. Any owner of real property governed by CC&Rs could claim that he had purchased the material for an addition to the property in ignorance of the restriction or under a different interpretation of the restriction. The adjoining property owners would not have had an opportunity to object, but the violator could require a decision on relative hardships before the CC&Rs could be enforced. This would erode the uniformity to which all owners of property covered by the CC&Rs, including the violating owner, agreed. Therefore, the courts have adopted a more stringent test.

¶23 Meienberg had knowledge of the height restriction and continued construction after Bramhall informed him the hangar would violate that restriction. At the time Meienberg installed the vents and violated the restrictions, he had been informed that the vents would cause the structure to exceed the maximum-allowed building height. Accordingly, we conclude the trial court neither clearly erred in finding that Meienberg's

violation was intentional nor abused its equitable discretion in granting injunctive relief.[4] *See Turner*, 196 Ariz. 631, ¶ 5, 2 P.3d at 1279.

**Rule 59(b) Motion**

¶24 Meienberg argues the trial court erred by denying his motion, made pursuant to Rule 59(b), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, to submit additional evidence regarding the burden compliance with the restriction would have imposed on Meienberg. Rule 59(b) affords a trial court "broad discretion to act in the interests of justice." *McCutchen v. Hill*, 147 Ariz. 401, 406, 710 P.2d 1056, 1061 (1985). Accordingly, a trial court's decision not to accept additional evidence "'must be upheld on appeal unless there is a clear showing that there was no reasonable basis within the range of discretion for the action taken.'" *Id.* at 407, 710 P.2d at 1062, *quoting duPont v. United States*, 385 F.2d 780, 783 (3d Cir. 1967).

¶25 The trial court concluded Meienberg could not successfully claim the benefit of relative hardships because he knew of the height restriction and the opposition to his hangar's exceeding it and proceeded to complete construction anyway. We have held that

---

[4]Therefore, as Meienberg concedes, we need not address his argument, based on *Lacer v. Navajo County*, 141 Ariz. 396, 687 P.2d 404 (App. 1983), that the relative hardships required the trial court to deny the injunction. Also, at oral argument, Flying Diamond contended that the balancing of the hardships was an equally strong alternative basis to affirm the trial court. Although we agree with Flying Diamond that the record supports the trial court's determination that the balance of hardships did not favor Meienberg, we need not reach the balancing test because Meienberg lost the right to request a balancing of the hardships when, as the trial court also found, he intentionally violated the restriction.

12

this decision was not error. Meienberg's proposed evidence would only have been relevant to a balancing of hardships. Because Meienberg's status as an intentional violator prohibited him from claiming hardship, the evidence would have made no difference. Accordingly, the court did not err in denying Meienberg's motion.

## Estoppel

¶26 Finally, Meienberg argues the trial court erred in concluding that equitable estoppel did not bar Flying Diamond from obtaining equitable relief. He does not contend that the court erred as a matter of law in reaching its decision, but rather, that the evidence does not support its conclusion.

¶27 We review a trial court's decision not to apply estoppel for an abuse of discretion. *See Ahwatukee Custom Estates Mgmt. Ass'n v. Turner*, 196 Ariz. 631, ¶ 5, 2 P.3d 1276, 1279 (App. 2000) (decision to grant injunctive relief in trial court's discretion); *Pizziconi v. Yarbrough*, 177 Ariz. 422, 427, 868 P.2d 1005, 1010 (App. 1993) (applying abuse of discretion standard of review to equitable estoppel and laches claim in child support proceeding). A court abuses its discretion if it commits an error of law in reaching a discretionary conclusion, it reaches a conclusion without considering the evidence, it commits some other substantial error of law, or "the record fails to provide substantial evidence to support the trial court's finding." *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 453, 456, 652 P.2d 526, 529 (1982). Because Meienberg does not argue the court erred as a

13

matter of law, our review is limited to determining whether substantial evidence in the record supports the court's conclusion. *See id*.

¶28    There are three elements to equitable estoppel: "'(1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct.'" *City of Tucson v. Whiteco Metrocom, Inc.*, 194 Ariz. 390, ¶ 22, 983 P.2d 759, 765 (App. 1999), *quoting Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, ¶ 35, 959 P.2d 1256, 1267-68 (1998); *see also Camelback Del Este Homeowners Ass'n v. Warner*, 156 Ariz. 21, 26, 749 P.2d 930, 935 (App. 1987). The party to be estopped must induce reliance "'by his acts, representations or admissions intentionally or through culpable negligence.'" *LaBombard v. Samaritan Health Sys.*, 195 Ariz. 543, ¶ 12, 991 P.2d 246, 249-50 (App. 1998), *quoting St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 317, 742 P.2d 808, 818 (1987). Resulting reliance must be justifiable. *Villas at Hidden Lakes Condos. Ass'n v. Geupel Constr. Co.*, 174 Ariz. 72, 78, 847 P.2d 117, 123 (App. 1992).

¶29    The trial court rejected Meienberg's estoppel claim, stating it was "without merit." The court found that "[t]here was insufficient evidence that [Flying Diamond] engaged in acts which were inconsistent with its claim that [Meienberg]'s structure exceeded the height limitations, that [Meienberg] took any action to his detriment, and relied upon any

14

actions of [Flying Diamond], nor that as a result of [Flying Diamond]'s acts, [Meienberg] suffered damages."

¶30 Substantial evidence supports the trial court's conclusions. Meienberg knew of the height restriction and ordered the parts for the hangar before Bramhall reviewed the plans. The plans he asked Bramhall to review did not include the dimensions of the vents, and there was no discussion of the vents when they met. Bramhall reminded Meienberg to make sure the building was not more than twenty-two feet tall. Meienberg never asked Bramhall specifically to approve the plans, and neither Bramhall nor the committee as a whole had authority to approve or disapprove plans.

¶31 This evidence supports the conclusions that Flying Diamond did not commit any act or make any representation that would induce reliance and that it did not intentionally or negligently induce reliance. *See LaBombard*, 195 Ariz. 543, ¶ 12, 991 P.2d at 249-50. Additionally, the evidence supports the conclusions that Meienberg did not rely on any act or representation of Flying Diamond and that any alleged reliance was not justifiable. *See Villas at Hidden Lakes Condos. Ass'n*, 174 Ariz. at 78, 847 P.2d at 123.

¶32 Meienberg cites *First Hyland Greens Ass'n v. Griffith*, 618 P.2d 745 (Colo. Ct. App. 1980), in support of his estoppel argument. In *Griffith*, the covenants mandated that all plans be submitted to an architectural control committee for approval. *Id.* at 746. One covenant prohibited the construction of more than one single family residence per lot. *Id.* The Griffiths had submitted plans to the committee for a swimming pool, fence, and

pool house on their lot. *Id.* The committee approved the plans for the pool and the fence, but asked for more complete plans for the pool house. *Id.* The Griffiths proceeded with construction and submitted revised plans, at which point the committee disapproved plans for the pool house based on the single-family-home limitation and on the size of the pool house. *Id.* at 746-47.

¶33 In an action to enjoin construction of the pool house, the Griffiths contended that the association was estopped from obtaining equitable relief by virtue of the initial approval and request for further pool house plans. *Id.* The trial court granted the association's motion for summary judgment, holding that the Griffiths were not entitled to rely on the initial approval as authorization for the pool house they began to construct. *Id.* at 747. The Colorado Court of Appeals upheld the trial court's decision that the initial authorization did not permit the type of pool house the Griffiths had begun to construct. *Id.* But the court concluded a genuine issue of material fact existed as to whether the initial approval could "be construed as authorizing a pool house of some type containing a dressing room, and whether the [Griffiths] reasonably relied on the letter to that extent." *Id.*

¶34 The circumstances of this case are quite different. The architectural advisory committee here was voluntary and not authorized to approve or disapprove plans. In *Griffith*, approval of plans by the committee was not only authorized but mandatory. *See id.* at 746. In addition, in *Griffith*, the initial authorization was in writing and was based on plans indicating the pool house would be used as a dressing room, an important issue in the

16

case. *Id.* at 746-47. Here, the plans did not include a measurement of the height to the top of the hangar's roof or the dimensions of the vents, and Bramhall and Meienberg did not discuss the vents. Finally, the court in *Griffith* addressed the propriety of summary judgment and remanded the case for a determination of factual questions. *Id.* at 747. Here, there has already been a trial and a detailed determination of the facts. *Griffith*, therefore, does not help Meienberg. Because substantial evidence supports the conclusion that Meienberg failed to prove estoppel, the court did not abuse its discretion in reaching that conclusion. *See Grant*, 133 Ariz. at 456, 652 P.2d at 529.

### Conclusion

¶35 For the foregoing reasons, we affirm the trial court's judgment. Upon its compliance with Rule 21(c), Ariz. R. Civ. App. P., 17B A.R.S., Flying Diamond's request for attorney fees on appeal is granted, pursuant to a provision in the CC&Rs entitling the successful party to a reasonable attorney fee.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
JOHN PELANDER, Chief Judge

17

_____
GARYE L. VÁSQUEZ, Judge