NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO W.G.

No. 1 CA-JV 22-0233
FILED 2-28-2023

---

Appeal from the Superior Court in Maricopa County
No. JS21029
The Honorable Wendy S. Morton, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Denise L. Carroll Attorney at Law, Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Modern Law, PLLC, Peoria
By B. Kathleen Gilbertson
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Daniel J. Kiley joined.

---

**C R U Z**, Judge:

¶1 Madeline J. ("Mother") appeals the superior court's order terminating her parental rights as to her son, W.G. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Mother and Samuel G. ("Father") were married in 2015 and are the biological parents of W.G., born in 2016. In 2017, the parties divorced by consent decree. That decree awarded the parties joint legal decision-making authority and incorporated a parenting plan designating Mother as primary residential parent while granting Father parenting time, primarily during school breaks.

¶3 After Father's first parenting time visit with W.G., Mother accused Father of poisoning and inappropriately touching W.G. Mother took W.G. to three medical facilities for evaluation and treatment. Each time, doctors found no reason for concern, with one doctor describing the results of the physical examination as "unremarkable and reassuring."

¶4 A few days later, Mother absconded to California with W.G., without the court's permission or notifying Father. Father then petitioned to modify legal decision-making and parenting time. The court awarded Father temporary sole legal decision-making and parenting time. About four months later, W.G. was found in California and returned to Father. Mother was arrested and charged with custodial interference and domestic violence.

¶5 In January 2018, Mother's attorney appeared at the modification hearing and requested parenting time on Mother's behalf. Mother's release conditions in the criminal case prohibited her from having contact with W.G. or Father without leave of court. While Mother was awaiting sentencing, the court continued its temporary orders and placed Father's petition to modify on the court's inactive calendar for dismissal in one year.

2

**¶6** In July 2018, Mother pled guilty to custodial interference. The court placed Mother on supervised probation for three years, ordering her to have no contact with Father or W.G. unless authorized by a family court order and approved in writing by the Adult Probation Department ("APD"). Mother never requested APD's permission to have contact with W.G., but she successfully completed her supervised probation term in July 2021, and the court designated the offense a misdemeanor.

**¶7** Since neither party requested an evidentiary hearing or other relief on Father's petition to modify, the court dismissed his petition in January 2019. In October 2021, Mother's counsel contacted Father's counsel in Utah requesting that the parties adhere to the original parenting time orders, but Mother's testimony was inconclusive on the results of that contact.

**¶8** In December 2021, Father petitioned to terminate Mother's parental rights. After a two-day contested hearing, the superior court terminated Mother's parental rights after finding she had abandoned W.G. and that termination was in his best interests. Mother has had no contact with W.G. for over four and one-half years.

**¶9** Mother timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶10** Although the right to the custody of one's child is fundamental, it is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). To terminate a parental relationship, the superior court must find by clear and convincing evidence at least one A.R.S. § 8-533(B) ground for termination, and also by a preponderance of the evidence that termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This court does not reweigh the evidence and will look only to determine if there is reasonable evidence to sustain the court's ruling. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We will affirm the superior court's ruling unless it is clearly erroneous. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

I.     Abandonment

¶11      Father's petition sought termination of Mother's rights based on abandonment.[1]  *See* A.R.S. § 8-533(B)(1).  "Abandonment" is defined as

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision.  Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child.  Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1).

¶12      "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct . . . ."  *Michael J.*, 196 Ariz. at 249, ¶ 18.  "What constitutes reasonable support, regular contact, and normal supervision varies from case to case."  *Pima Cnty. Juv. Action No. S-114487*, 179 Ariz. 86, 96 (1994).  Because the concept of abandonment and terms like "reasonable support" or "normal parental relationship" are imprecise and elastic, these are questions of fact left to the superior court.  *Id.*  Relevant facts for the court to consider include whether Mother "visited the [child] regularly, the nature of her relationship with the [child] and whether, within that context, she provided parental supervision and guidance as the circumstances allowed."  *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 20 (App. 2010).

¶13      Mother argues the court's findings of abandonment were not supported by the evidence.  But the record shows otherwise.  In its detailed 38-page ruling, the superior court evaluated all relevant evidence and considered both parties' evidence, testimony, and "every exhibit."  We will not disturb the court's findings when supported by substantial evidence.  *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

¶14      More specifically, Mother claims the court failed to consider (1) "the stifling effect of a court order of no contact," (2) Mother's age and maturity when she relocated with W.G. to California without the court's permission, and (3) Father's actions "in causing the alienation of" W.G.

---

[1]     In his petition, Father also alleged Mother neglected W.G., but the court terminated Mother's parental rights only on the abandonment ground.  *See* A.R.S. § 8-533(B)(1), (2).

from Mother. Although a court abuses its discretion when it reaches a conclusion without considering the evidence, *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007), there is no evidence that the court did so here. In its detailed ruling, the court addressed Mother's actions while subject to no-contact pre-sentencing release conditions and probationary terms. The court found Mother's argument that "her probationary no contact order kept her from having contact with [W.G.]" unpersuasive because at one point Mother requested parenting time while that order was in effect. And the court noted Mother's trial testimony that she knew she could request permission from APD to contact W.G. Mother also admitted her probation officer advised her to seek the family court's permission to have contact with W.G., but she never did so.

¶15 The court also addressed Mother's age and maturity when she relocated with W.G. to California, taking note of Mother's testimony that she "learned from this incident," realized her actions "were wrong," and admitted "she was very young and did not understand the legal ramifications" when she took W.G. to California. When considering Father's actions toward Mother, the court found his "actions were reasonable under the circumstances" and "were justified by Mother's actions." Mother asks this court to reweigh evidence and reassess witness credibility on appeal, which we will not do. *See Jesus M.*, 203 Ariz. at 280, ¶ 4. The court considered all relevant evidence when making its detailed abandonment findings, and we find no error.

II.     Best Interests

¶16 Mother also argues the court's best interests findings were erroneous. Termination is in a child's best interests if the child will benefit from the termination, or the child will be harmed if the court denies it. *Alma S.*, 245 Ariz. at 150, ¶ 13. In making the determination, the court evaluates the totality of circumstances at the time of trial, considering factors such as the availability of an adoption plan, the bond between the parent and the child, and the negative effect on a child of the continued existence of a statutory ground for termination. *Id.* at 150-51, ¶ 13; *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98-99, ¶¶ 10-12 (App. 2016).

¶17 The court found termination was in W.G.'s best interests because Mother has not seen W.G. for almost five years, W.G. has lived with Father since October 2017, and he is strongly bonded to Father and Father's wife. W.G. considers Father's wife to be his "mommy," and Father's wife wishes to adopt W.G. The court also found that, absent termination, W.G. would be harmed because Mother repeatedly made false allegations of

abuse against Father that resulted in W.G. receiving unnecessary and invasive medical treatment. The court's best interests findings are supported by the record.

**CONCLUSION**

¶18        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA